THE PEOPLE *v.* THE DETROIT AND PONTIAC RAIL ROAD.

A rail road company incorporated before the late revision of the statutes, whose charter is silent as to taxation, is liable to pay the specific tax imposed by R. S. ch. 21, sec. 5, p. 121.

CASE reserved from Wayne County Court.

The only question in the case, was, whether the rail road company, which was incorporated in 1834, and whose charter is silent as to taxation, was liable to pay the specific tax imposed on rail road, canal and turnpike companies, by R. S. ch. 21, sec. 5.

*Lothrop, attorney general,* for the plaintiff.

*Douglass,* for defendant.

*By the court,* MILES, J.   The question submitted to the court in this case, is, whether the defendant is liable to pay the specific state tax imposed by ch. 21, R. S., p. 121.   The power to tax the property of corporations as well as that of individuals, seems to be well established. This, however, was not accomplished without a struggle on the part of those whose interests have been thus seriously affected.   The charter of the Providence Bank in the state of Rhode Island, was granted in 1791, and previous to the passage of an act of the legislature in 1822, imposing a tax upon bodies corporate within the state.   The collection of this tax was resisted, upon the ground that the act was repugnant to the constitution of the United States, inasmuch as it impaired the obli-

gation of the contract created by the charter of incorporation. Before the case was argued, the doctrine had been settled, in the Dartmouth College case, that a contract entered into between a state and an individual, was as fully protected by the 10th section of the 1st article of the constitution, as a contract between two individuals: and it was not denied that a charter incorporating a bank was a contract, and the question was, whether that contract was impaired by taxing the bank. The discussion of this question necessarily involved the inquiry whether the power of taxation was inconsistent with the charter: and it was strongly insisted that it was, mainly for the reason that this power might be so exercised as to destroy the object for which the charter was given.

Chief Justice Marshall, in the opinion delivered by him deciding the case, uses this language: "The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic." "This is an original principle, which has its foundation in society itself—it is granted by all for the benefit of all—it resides in government as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies."

In reply to the proposition of counsel, that a power which is in itself capable of being exerted to the total destruction of a grant, is inconsistent with the grant, and is, therefore, impliedly relinquished by the grantor, though the language of the grant contains no allusion to the subject, he says: "If this be an abstract truth, it may be supposed universal—but it is not universal, and, therefore, its truth cannot be admitted in these broad terms in any case." He alludes to a grant for land made by the government, the object of which is, that the profits issuing from it shall enure to the benefit of the grantee, and yet the power of taxation may be carried so far as to absorb those profits, and then says: "We must look for the exemption in the language of the instrument, and if we do not find it there, it would be going very far to insert it by way of construction."

This case was decided at the January term, 1830, 4 Peters 514. Fifteen years before that time, the case of the Portland Bank, in Massachusetts, was decided by Chief Justice Parker. In the course of the opinion delivered, he makes this pertinent inquiry: Did the legislature,

when it incorporated the plaintiffs, relinquish the right of laying an excise or duty upon the business which they should transact during the continuance of the corporation? The answer which he gives, is, "There is no express waiver or relinquishment, nor is there any strong implication of one." "The object of their charter is to enable them in a body to conduct their business as an individual, to make contracts, and to enforce them as such, avoiding the inconveniences of a partnership. This is all that is asked for by the company, and all that is given by the charter. It is a privilege to manage their business, and not an exemption from duty."

The right to impose a specific tax or excise, was made a point in judgment in that case, and was clearly and fully sustained under the provisions of the constitution of that state authorizing the legislature to impose and lay reasonable duties and excises upon any produce, goods, wares, merchandizes and commodities whatsoever. 12. Mass. 252.

In the case of Ontario Bank v. Bunnell, it was determined that the real and personal estate of a banking corporation was subject to taxation in a village where it was located, authorized by law to raise money by tax for certain purposes: that it was an *inhabitant* within the meaning of the act directing the tax to be assessed upon the freeholders and inhabitants of such village. 10 Wendell 186.

The power of exempting property from taxation seems to be equally well settled. The power of the state in making the grant in this case, or in any case, to impose upon the party accepting it such conditions, or to extend to it such privileges as may best comport with sound policy, within constitutional limits, seems to be conceded in the argument in the opinion in 4 Peters. In arguing whether the contract was impaired by taxing the bank, the court say, this question is to be answered by the charter itself, and that it contains no stipulation promising exemption from taxation.

The question, then, put to us, must be answered in the affirmative.

*Certified accordingly.*