21   481
66   483

SEYMOUR *against* The town of HARTFORD.

Grants or donations for religious and charitable purposes, made under the statute of 1702, providing that they shall forever be free from taxation, cannot, by its repeal, be subject to taxation.

But it is a very high act of legislative power for one legislature to grant an exemption from all future taxation, so as effectually to tie the hands of subsequent legislatures, under any and all emergencies.

And to bring the case within the principle above stated, the donor must, by the express terms of the grant, impress upon the property conveyed, a perpetual sequestration, for the maintenance of the ministry, or some other public and charitable use specified in the statute.

Therefore, where the grant was to an ecclesiastical society, *habendum* " to them, and their successors, forever, as a good, sure and absolute estate in fee simple, without any manner of condition ;" it was held, that this grant did not come within the statute, either by its terms, or by any implication arising from the character and powers of the grantee. [Two judges dissenting.]

THIS was a case agreed upon, by the parties, and submitted to the court for its decision thereon, pursuant to the statute, approved *June* 24th, 1848.

The case embraced the following facts. On the 7th of *July,* 1762, *Anne Burnham,* then of *Hartford,* in consideration of her love, good will and regard for the grantees, by a deed of that date, conveyed unto the *South Congregational Church or Society,* in the town of *Hartford,* now known as the *Second Ecclesiastical Society* of said town, a piece of land situated in that town, containing about four and one-

half acres, then known as the *Buckingham Homestead*. (*a*) On the 1st day of *July*, 1782, said society, having in their actual possession and occupation the *North* half of an acre of said homestead, lying at the extreme *South* end thereof, did, by a committee authorized to dispose of the same, by demise or otherwise, for the benefit and best advantage of said society, lease, for the term of 999 years, said half acre, with the appurtenances, to *Jonathan Chapman*, the lessee covenanting to keep the premises in repair, and to surrender them, on his failure to pay the stipulated rent. At some time previous to the 13th of *October*, 1812, said society repossessed themselves of the *South* moiety of the half acre so leased to said *Chapman*, and, at the time last mentioned, leased the same, with the appurtenances, to *Robert Seyms*, for the term of 969 years, upon the same conditions and with the same covenants as were contained in said *Chapman's* lease. This land, with the buildings thereon, has been conveyed, by sundry quit-claim deeds of said *Seyms* and his assigns, to the plaintiff, in whose possession and occupation it now is.

(*a*) The following is a copy of the deed.

" To all People, to whom these Presents shall come : I, *Anne Burnham*, of *Hartford*, in the County of *Hartford*, and Colony of *Connecticut*, in *New England*, Widow, send Greeting :

" Whereas it was the true intention and real purpose of my son *Joseph Buckingham*, Esqr., of said *Hartford*, deceased, to have given unto the *South Congregational Church* or *Society*, in said Town of *Hartford*, the House and Homestead in said Town where I now dwell, containing about four acres and a half, more or less ; bounded *East* and *North* on the Highway, *West* on the land of *Aaron Bull*, and *South* on *Daniel Sheldon's* land; and, while making his last will and testament to that purpose, and before he had fully completed the same, was suddenly removed by death ; and the said estate having thereby fallen unto me, as the next of kin unto the said deceased ; and being willing and desirous that the good intentions and purpose of my said son should take effect, and for the consideration of the love, good will and regard which I have and do bear unto the said Church and Society, I do therefore, by these presents, fully, freely and absolutely, give, grant, release and confirm unto the said *South Church or Society*, called *Congregational*, and to their successors forever, all the aforesaid House, Homestead and premises, with their appurtenances : To Have, and to Hold unto them, and their successors forever, as a good, sure and absolute estate in fee simple, without any manner of condition : in witness whereof, I have hereunto set my hand and seal, the seventh day of *July*, *A. D.* 1762.

Her<br>
ANNE ⋈ BURNHAM."<br>
mark.

On the 1st of *May*, 1792, said society, being fully possessed of the *South* half acre, part of said homestead, adjoining to the land leased to said *Seyms*, leased it to *Joseph Bull*, for the term of 999 years, upon the same conditions, and with the same covenants on the part of the lessee, as were contained in said *Chapman's* lease. The *South* moiety of the half acre last described has, by sundry mesne conveyances, become vested in the plaintiff, in whose possession and occupation it now is.

*Hartford*,
November,
1851.

Seymour
*v.*
Hartford.

The *North* or other moiety of said half acre, last described, was, by the executors of said *Bull*, under-leased and assigned, for the unexpired part of the term, to *Lewis Terry*, it being provided in the assignment, that the rent of the premises should be paid to said society ; and on the 13th of *March*, 1816, by a quit-claim deed of that date, said *Terry* surrendered his interest to said society ; and the next day, said society leased the same land to said *Terry* anew, by a lease containing the same conditions and covenants on the part of the lessee as in said *Chapman's* lease. By divers quit-claim deeds of said *Terry* and his assignees, this property has been conveyed to the plaintiff, in whose possession and occupation it now is.

The buildings on the above-named three adjoining pieces of land, now held by the plaintiff, have been by him greatly repaired and much enhanced in value ; and the plaintiff has paid, and still pays to the society, the annual rent due upon said lands ; and said rents ever have been, and still are, applied for public and pious uses, and for the support of the gospel ministry.

Neither said lands, nor the buildings thereon, were taxed, or assessed for taxation, by the authority of the town of *Hartford*, previous to the year 1821. But since the year 1823, and particularly in the years specified in a schedule made a part of the case, the plaintiff has paid taxes of divers amounts, to their agent, the collector of the town of *Hartford*, upon the buildings situated upon the aforesaid leased lands.

The plaintiff claimed, that the assessment of taxes upon said buildings was illegal, and the payment thereof void ; and that he was entitled to recover of the defendants, in an ac-

*Hartford,*
November,
1851.

*Seymour*
*v.*
Hartford.

tion at law, the amount so paid. This claim was resisted, by the defendants.

The case was argued before this court, at the meeting of the judges to revise their opinions, in *November*, 1851, by *L. F. Robinson* for the plaintiff, and *T. C. Perkins*, for the defendants.

In behalf of the plaintiff, it was insisted, 1. That by the deed of *Anne Burnham*, the land in question was granted " for the maintenance of the ministry of the gospel," or for some " other public and charitable use," or was " sequestered to pious uses," within the meaning of the statute in force at the time of the grant. (*a.*)   First, a grant to public, pious and charitable *uses*, means simply a grant to public, pious and charitable *purposes* or *objects*.   It need not be a technical conveyance to *uses*, or to a trustee for the benefit of a *cestui que use*.   The conveyances mentioned in *Osborne* v. *Humphrey* & al. 7 *Conn. R.* 335. and *Parker* v. *Redfield*, 10 *Conn. R.* 490. were not technically conveyances *to uses :* they merely specify the *purpose* of the grant.   Secondly, a grant to a religious or charitable *institution*, is, without any further specification of its objects or purposes, a grant to pious or charitable uses.   Under the *English* statute of charitable uses, (43 *Eliz. cap.* 4.) such grants have been sustained.   Also, in such of the *United States* as have recognized the validity of grants to charitable uses, as a common law principle.   *Hornbeck's* exr. v. *American Bible Society*, 2 *Sandf. Ch. R.* 133.   *Cammeyer* v. *United German Lutheran Churches, Id.* 186.   *Burr's* exrs. v. *Smith* & al. 7 *Verm.* 241.   In all these cases, the grants have been made directly to a religious or benevolent institution, without any intervening trust, and without specifying the object of the gift otherwise than by necessary implication.   The *South* or *Second Ecclesiastical Society* was, at the time of the grant, and ever since has been, an association, organized and existing for pious purposes only ; that is, " for the maintenance of the ministry of the gospel."

2. That so far as the *land* is concerned, the present case

(*a*) Commonly known as the statute of 1702, as its first appearance in the statute book is in the revision of that year.

is not distinguishable from *Osborne* v. *Humphrey* & al. *ubi*
*sup.* and *Landon* v. *Litchfield*, 11 *Conn. R.* 251.

3. That the *buildings* are a part of the land, and equally
exempt from taxation.   *Osborne* v. *Humphrey* & al., *Parker*
v. *Redfield, Hart* v. *Cornwall*, 14 *Conn. R.* 228.

For the defendants, it was contended, 1. That the statute
of 1702, exempting certain property from taxation, being in
derogation of the common law, must be construed *strictly.*
*Parker* v. *Redfield*, 10 *Conn. R.* 498.   *Providence Bank* v.
*Billings*, 4 *Peters*, 561.

2. That to bring the case within the statute, the *purposes*
of the gift must be *distinctly specified* in the instrument.   A
parol limitation of a use, is not valid; and if it were, none is
shewn in this case.   Here, it is not expressed in the deed,
that the land is given for pious uses.   On the contrary, the
deed, as if to repel any such implication, declares the gift to
be *"without condition."*   Looking only at the conveyance
and the documentary proof, the plaintiff fails to bring his
case within the statute.   This ought to end the case; for it
was no part of the design of the statute to change the rules
of evidence, or the requirements of law as to the mode of con-
veying real estate, or declaring its uses.

3. That there are no other sources of evidence, which will
sustain the plaintiff's claim.   It may be said, that the con-
veyance is to an *ecclesiastical* society.   The first answer to
this consideration is, that if the legislature had intended to
make the mere character of the grantee the test, it would
have been easy to say so.   But this it has not said.   Anoth-
er answer is, that for the purpose of exemption, there is no
necessity of any conveyance to such a society: a transfer to
trustees would be equally available.

ELLSWORTH, J.   In this case, we think judgment should
be rendered for the defendants.   In coming to this result, we
do not mean to overrule the cases heretofore decided by this
court, referred to at the bar; for whatever might be our
opinion upon the question of the exemption of property from
taxation, were it an open one, it is now too late to contend,
that grants, or donations for religious and charitable purposes,
made under the statute enacted at some period before 1702,

which provides, that they shall forever be free from taxation, can, by its repeal, be subject to taxation, as if the statute had never existed. It is certainly a very high act of legislative power, for one legislature to grant an exemption from all future taxation, so as effectually to tie the hands of future legislatures, under any and all future emergencies. But this has been held to be properly done; and it has been sanctioned, by the highest judicial authority of the land. It was so held in the supreme court of the *United States,* in *Gordon* v. *Appeal Tax Court,* 3 *Howard,* 133. *Terrett* v. *Taylor,* 9 *Cranch,* 43. *Fletcher* v. *Peck,* 6 *Cranch,* 87. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 578. In these cases, grants were held to be in the nature of contracts, within the clause of the constitution of the *United States,* which prohibits the states from passing laws impairing the obligation of contracts. Such irrevocable exemption from taxation has been repeatedly sanctioned in our own courts, and in other state courts. We refer to *Atwater* v. *Woodbridge, Osborne* v. *Humphrey, Parker* v. *Redfield, Landon* v. *Litchfield, Hart* v. *Cornwall, Derby Turnpike Co.* v. *Parks, Enfield Bridge Co.* v. *Hartford and New-Haven Railroad Co., The same* v. *Connecticut River Company, East-Hartford* v. *Hartford Bridge Company,* in our reports; and to *Fellows* v. *Pinney,* 13 *Verm. R.* 526. 15 *Verm. R.* 26. *Armington* & al. v. *Barnet* & al. 15 *Verm. R.* 745. 752. *Brewster* v. *Hough,* 10 *N. Hamp.* 138. 142. & seq. *Backus* v. *Lebanon,* 11 *N. Hamp.* 20. *Charles River Bridge* v. *Warren Bridge,* 7 *Pick.* 344. S. C. in err. 11 *Peters,* 420. 576. *Chesapeake and Ohio Canal* v. *Baltimore and Ohio Rail-road Company,* 4 *Gill & Johns.* 1. *Boston Water Power Company* v. *Boston and Worcester Rail-road Corporation,* 23 *Pick.* 360. 11 *Leigh,* 42. 76. Other cases might be cited.

While, however, we say this much, we would be equally explicit in declaring our intention not further to extend this exemption from taxation. We think the present case is altogether distinguishable from others, and on that ground place our decision. In the cases in our own court, the donor had, by the *express terms* of the grant, *impressed* upon the property, a perpetual sequestration for the maintenance of the ministry, &c. He *declared* what should be the exact and exclusive object of the grant, which we hold to be en-

tirely indispensable; for the language of the statute is, "that all such lands, tenements, hereditaments and other estates, that either formerly have been, or hereafter shall be, given and granted, either by the General Assembly of this colony, or by any town, village or particular person or persons, for the *maintenance* of the ministry of the gospel, in any part of this colony, or for schools of learning, or for the relief of poor people, or for any other public and charitable use, shall forever remain and be continued to the use or uses to which such lands, tenements, hereditaments, or other estates have been, or shall be, given and granted, *according to the true intent and meaning of the grantors, and to no other use whatever;* and also be exempted out of the general lists of estates, and free from the payment of rates."

*Hartford,*
November,
1851.

Seymour
*v.*
Hartford.

Nothing of this is to be found in the deed of Mrs. *Burnham;* but, on the other hand, the deed expressly declares the gift is a *sure* and *absolute fee simple,* without *any manner of condition.* Of course, the grantor does not require, that the property should be sequestered or kept or used, for the maintenance of the ministry; nor does she declare any particular intent whatever, unless the general character and corporate powers of the society imply one; which we think, is not the case. Nothing of this can be ascribed to the law. It is enough to allow the *grantor* to do this, if it is her desire; and if she will not do it, the deed cannot be held to come within the provisions of the statute.

We are unable to distinguish this grant from any absolute purchase made by the society generally, or from any unqualified gift made to it; as a purchase of bank stock, or of a library of books, or of land, or anything else, which it may purchase, or receive by donation. We discover in Mrs. *Burnham's* deed nothing but an unqualified transfer of property, which may be used, at the pleasure of the grantees; no restriction, no sequestration for any public object. The society may do with it as they please: they may sell it, or use it, or give it away, without being liable to any one.

But it is said, and with much emphasis, that the character of the grantees, they being a religious body, possessing only attributes to promote religious objects, impresses upon the property, of necessity, the character of a sequestration or perpetual gift for religious purposes, since this is the only use

*Hartford,*
November,
1851.

Seymour
*v.*
Hartford.

to which the society can, by possibility, appropriate it. Therefore they insist, this is according to the true intent and meaning of the *grantor.* But the defendants can certainly sell this property, if it is their wish, and can reinvest the proceeds, as often as they please, without any accountability whatever: the heirs of the testatrix cannot complain, and who then can? Besides, the statute requires that the *grantor* shall make the sequestration *herself:* she cannot leave it to the law to do it for her. So too, the present character of the grantees may hereafter, by the legislature, be essentially changed, by its conferring upon them new and enlarged attributes.

Since, then, there is, as we believe, a manifest difference between the present case and those referred to; and as we are unwilling to extend the principle there decided, we hold the property in question is liable to be taxed; and therefore, that the plaintiff cannot recover.

WAITE and HINMAN, Js., were of the same opinion.

CHURCH, Ch. J. and STORRS, J. dissented, on the ground that this case was not distinguishable in principle from that of *Landon* v. *Litchfield,* 11 *Conn. R.* 251.

Judgment for defendants.