## Albert Walcott v. The People.

*Constitutional law:* *When law imposing a tax shall specify the object to which it applies.* The provision of the Constitution — *Art. 14,* § *14* — which directs that every law imposing a tax shall specify the object to which it is to be applied, does not require this to be done in the act itself, where the application of the tax is distinctly made by the Constitution and can not be altered by the legislature; and, inasmuch as all specific taxes are thus appropriated by the Constitution, a law imposing such taxes is not void for omitting to provide for their appropriation.

*Constitutional law:* *Limitation of power to continue specific taxes.* The express power given by the Constitution — *Art. 14* § *10* — to continue specific taxes authorized by existing laws, and to impose specific taxes on corporations thereafter created, does not limit the right of specific taxation to such cases, but leaves the legislature at liberty to use it for such other purposes and branches of business as may be found to render it expedient.

*Constitutional law:* *Tax on express companies: Commerce.* The act requiring express companies — *Sess. Laws 1867, p. 195* — to pay a specific tax of one per cent. on the gross amount of current business within the State, is not repugnant to that clause of the Federal Constitution which gives to Congress the power to regulate commerce among the several states.

*Heard April 28th. Decided May 13th.*

Error to Wayne Circuit.

This action was brought to recover from the defendant below, and who was an agent of the American Express

WALCOTT v. THE PEOPLE.

Company, the penalty for an alleged violation of the provisions of *Act No. 140, Session Laws of 1867*, entitled "An act to regulate express companies and their agents, and individuals prosecuting the express business, not incorporated by the State of Michigan."

The cause was tried without a jury, and the court found the following facts:

"That the American Express Company, so called, is engaged in the state of Michigan in transacting an express business and forwarding packages and property by express for hire.

That said company is not a corporation, but is a copartnership, having its principal office or place of business in the city of New York, and is engaged in transporting for hire, freight and valuable parcels between the several States of the United States, and between said States and the adjoining Dominion of Canada, through the State of Michigan, and between said State and the other States of the United States and Dominion of Canada to and from said State.

That said company has, for the purpose of transacting its said express business within this State, and between places in this State and other States and foreign countries, many agents and offices, and also valuable property, personal and real, at various points and places throughout the State, upon which said property taxes for State and local purposes are annually levied, assessed and collected, as upon other property of equal value in this State.

That from the first day of February, A. D. 1868, to the day of the filing of the declaration in this cause, the defendant has acted as an agent and officer of said company in the transaction of its said business in the State of Michigan, and as such did daily, within said county of Wayne, perform the acts mentioned in said declaration, to wit: forward one or more parcels by express without complying with the provisions of the act mentioned and referred to in said

declaration, and that said company did not comply with the provisions of said act.

That said defendant did not, nor did said company, or any one in their behalf, file the statement and procure the certificates mentioned in section one of said act, or pay the tax specified in section two of said act, declared by said act to be a condition precedent to the issuing of such certificates, although they were willing and offered to file the statement required by section one of said act."

Whereupon the court found, as a matter of law, that the defendant was liable to the plaintiff in manner and form as declared against, and rendered judgment in favor of plaintiff against defendant in ten dollars damages and costs of suit to be taxed.

*Moore & Griffin*, and *A. Mandell*, for plaintiff in error.

1. No recovery of a penalty for a violation of the provisions of said act can be had, because said act does not distinctly state the object to which the specific tax mentioned in section 2 is to be applied.—*Art. 14, § 14, Const.*

This provision of the constitution is imperative, and not directory.—*36 Barb. 178; 17 N. Y. 235.*

2. *Article 14, § 10, Const.* evidently contemplates that no specific tax shall be collected except from "banking, railroad, plank road, and other corporations hereafter created."

The special enumeration of these organizations on which a specific tax may be imposed excludes all others.

This section further contemplates that such tax shall be imposed only on "corporations," and we think on corporations created by the Legislature of Michigan.

It is admitted that the American Express Company is not a corporation, but simply a copartnership, or more properly, perhaps, a joint-stock company. It has none of the privileges or exemptions of a corporation from taxation for municipal or local purposes.

The specific tax in this case is on the "business" of the company, and we think in contravention of the constitution.

3. Again: Specific taxes are rather odious, as they operate unequally in reference to other property. The convention did not intend to increase, but rather to restrict them: Hence — *Art. 14,* § *11* — "The Legislature shall provide an uniform rule of taxation, except on property paying specific taxes."

Taxation operates upon a community, or upon a class of persons in a community, and by some rule of apportionment. — *4 N. Y. 419.*

A common burden should be sustained by common contributions, regulated by some fixed general rule, and apportioned according to some uniform rates of equality. — *5 Dana, 28; 9 Id. 513.*

If, however, the Legislature is still at liberty to impose specific taxes upon all kinds of property and upon business, they may evade and defeat this uniform rule, and make particular interests bear all the burdens of the state: the very evil the convention intended to provide against.

A specific tax upon the "gross receipts" of the company on their current business, performed entirely within this state, would be a tax upon business, prohibited by implication by the constitution; but sought to be authorized under the new constitution, so called, recently submitted to the people. *Art. 11,* § *12.*

The personal and real property of the company in Michigan already shares its burden of taxation wherever situated for state, municipal and local purposes.

4. What is the construction of subdivision "Fourth" in section 1 of said act?

It does not seem to contemplate as gross receipts anything not earned in Michigan. The language is "Gross receipts on their current business in this state."

What is their "business?" Plainly carrying goods and other property, and their earning and receiving pay; in imple language, "freight."

To tax portions of freight earned in New York, Ohio, Canada, or any other state or foreign country before the package reaches Michigan, would be an interference with commerce, and in violation of *Sub. 3, Art. 1, § 18, Const. U. S.* which provides that the Congress shall have power "to regulate commerce with foreign nations and among the several states, and with the Indian tribes."

As the company reside in New York, that State may impose the same, or even a higher and prohibitory rate of taxation for the earnings accruing over the whole line.

We think this claim of state power to tax the business of the company passing through the state, or commencing in Michigan and terminating in another state, or commencing in another state and terminating in Michigan, is settled adversely by numerous decisions of the Supreme Court of the United States, commencing with *9 Wheat. p. 1; 12 Id. 419; 5 Cond. R. p. 570.*

5. If the specific tax be illegal, no penalty can be imposed for a neglect or refusal to pay it; and as the payment of the tax is declared by the second section of said act to be a "condition precedent" to the issuing of the annual certificate or license by the State Treasurer, the tax being illegal, the penalty will not be enforced.

It is admitted that the company were willing and offered to file the statement required by section one of said act.

*Wm. L. Stoughton,* Attorney General, for the People.

The plaintiff in error was prosecuted for a violation of the provisions of an act of the legislature, entitled "An act to regulate express companies," etc. approved March 27, 1867 *S. L. 1867, p. 194.*

The tax imposed by this act, is resisted upon the ground that it is unconstitutional.

1. Legislative enactments are not to be disregarded, unless they are clearly, plainly, and palpably unconstitutional. It has been repeatedly held that to warrant the court in

setting aside a law as unconstitutional, the case must be so clear that no reasonable doubt can be said to exist.— *6 Cranch, 128; 12 Wheat. 294; 5 Mich. 252; 1 McCook's (O.), 82.*

2.  The taxing power is one of the inherent powers of the government, and belongs appropriately to the legislative department, and, when not restrained by direct constitutional prohibitions, it is unlimited as well as undefinable in its objects, uses and extent.—*24 Barb. 447 – 481; 4 Peters, 514; 1 Mich. 458.*

3.  There is nothing in the constitution of this State which restricts the legislature from imposing this tax. *Art. 14, § 1,* provides that specific taxes shall be applied to the payment of the interest on the educational funds, and the principal and interest of the State debt. *Sec. 10* provides that "The State may continue to collect all specific taxes accruing to the treasury under existing laws. The legislature may provide for the collection of specific taxes from banking, railroad, plank road, and other corporations hereafter created." This is not a restriction; it takes away no power of the legislature. "An act of the legislature, not prohibited by express words of the constitution, or by necessary implication, can not be declared void as a violation of that instrument.— *Sears v. Cottrell* — above cited.

The constitution can not be construed so as to mean more than the words naturally imply. There is no room for construction and none is allowable.—*Sedg. on Con. and Stat. L. 227.*

Under this provision of the constitution specific taxes have been imposed upon — *Brokers and Exchange Dealers, 1 C. L. 331; Hawkers and Peddlers, Id. 333; Telegraph Lines, Id. 422; Bridge Companies, Id. 548; Manufacturing Companies, Id. 580; Musical Societies, Id. 588; Telegraph Companies, Id. 675; Foreign Insurance Companies, S. L. 1861, 43, 1865, 261.*

The remaining sections of *Art. 14,* are as follows:

" SEC. 11.   The legislature shall provide a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law.

SEC. 12.   All assessments hereafter authorized shall be on property at its cash value.

SEC. 13.   The legislature shall provide for an equalization, by a State board, in the year 1851, and every fifth year thereafter, of assessments on all taxable property, except that paying specific taxes.

SEC. 14.   Every law which imposes, continues, or revives a tax, shall distinctly state the tax and the object to which it is applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

The tax referred to in *Sec. 14* is a direct tax on property, and not a specific tax. — *Sedg. on Stat. and Con. L. 557; 3 Scam. 127; 12 Mass. 252.*

Any other construction would lead to the most absurd and unreasonable results.   " No text imposing obligations is understood to demand impossible things." *Sec. 1* of the article, prescribes how specific taxes shall be applied, and places the whole matter beyond the power and even the knowledge of the legislature.

It would be ruinous to the finances of the state, and would invalidate the legislation for the last twenty years, in relation to specific taxes.   We earnestly submit that a construction of the constitution which has been acquiesced in, and acted upon for that time, and has become inseparably connected with the financial policy of the state, ought not to be disturbed; even if erroneous, which we do not admit, it fairly comes under the rule of *stare decisis.* — *7 Mich. 12 - 23.*

And, so far as this particular tax is concerned, " the object to which it is to be applied," is stated as fully as is possible.

4.   It can not be claimed that the provisions of this act are in conflict with *Art. 1, § 8, Sub. 3 of the Const. of the United States.*

The express system is of recent origin. It was unknown at the time of the adoption of the constitution, and does not come within the definition of commerce as used in that instrument.— *Vol. 7 N. Am. Cyc. 376.*

Transportation by water is a mere incident to the business. Railroads and public highways, are and have been principally used.

These companies charge extraordinary tariffs; require and receive extraordinary protection and privileges, and there is no reason why they should not pay a fair share of the public burden.

The power delegated to congress does not necessarily exclude all power on the part of the state to regulate any commercial topic. Where subjects are in their nature local, they are not taken away from the control of the state by the grant of power in the constitution to congress.— *12 How. 299; 18 Id. 71; 21 Id. 184.*

GRAVES J.

This suit was instituted by the defendants in error to recover a penalty given by the act approved March 27, 1867, entitled "an act to regulate express companies and their agents, and individuals prosecuting the express business, not incorporated by the State of Michigan." The cause was tried without a jury, and the court found that the American Express Company, so called, was engaged in this state in transacting an express business, and forwarding packages and property by express for hire; that said company was not a corporation, but a copartnership, with its principal office or place of business in the city of New York, and was engaged in transporting for hire freight and valuable parcels between the several states of the United States, and between such states and the adjoining Dominion of Canada, through the State of Michigan, and between said state and the other states of the United States and Dominion of Canada, to and from said state; that said

company, for the purpose of transacting such express business in this state, and between places in this state and other states and foreign countries, had many agents and offices, and also valuable property, personal and real, at various places throughout the state, upon which property taxes for state and local purposes were annually assessed and collected as upon other property of equal value in this state; that from the 1st day of February, A. D. 1868, to the day of the filing of the declaration in this cause, the defendant had acted as an agent and officer of said company in the transaction of its said business in this state, and, as such, had daily, within the County of Wayne performed the acts mentioned in the declaration, to wit: Forwarded one or more parcels by express, without compliance with the provisions of said act, and that said company had not complied with the provisions of said act; that neither said defendant nor said company, or any one in their behalf, had filed the statement and procured the certificates mentioned in section one of said act, or paid the tax specified in section two, and declared by the act to be a condition precedent to the issuing of such certificates, although they were willing, and offered to file said statement.

The court further found as matter of law that the defendant was, upon such facts, liable to the people as alleged, and accordingly entered judgment in favor of the latter, and against the former, for ten dollars damages and costs of suit; and that judgment is now before this court upon a writ of error.

It is maintained on the part of the plaintiff in error that the act in question is invalid, and this view is supported by arguments drawn from several sources. It is contended in the first place that the law is not in compliance with that portion of *Art. 14*, § *14*, of the state constitution, which requires every law imposing a tax to state distinctly the object to which it is to be applied.

Whenever an act of the legislature is assailed as being unconstitutional, it is essential, in the first instance, to

ascertain the meaning of those provisions of the law and constitution, supposed to be incompatible. If, upon due consideration, it is evident that both can not stand together, the result is instant, certain and decisive, and the inferior authority yields to that which is supreme. If, however, the inquiry leaves the mind in doubt as to whether the statute is in derogation of the constitution, a just presumption comes in aid of the legislative judgment and overcomes the doubt.

The second section of the act in question requires the company, association or individual conducting the business specified, to pay into the state treasury a *specific state tax* of one per cent. on the gross amount of current business in the state, and that the treasurer shall give his receipt therefor.

It is provided by *Art. 14, § 1, Const.* that "all specific state taxes, except those received from the mining companies of the Upper Peninsula, *shall be applied* in paying the interest upon the primary school, university and other educational funds, and the interest and principle of the state debt, in the order herein recited, until the extinguishment of the state debt, other than the amounts due to educational funds, when such specific taxes shall be added to and constitute a part of the Primary School Interest Fund." It is apparent that the fundamental law has irrevocably prescribed the application of all such specific state taxes as that imposed by the act in question, and that the legislature could in no manner change the purpose or alter the destination of the tax.

The application is not only unalterably fixed, but is specifically defined, and nothing could be added by legislation but an idle repetition of the language of the constitution. The statute distinctly describes the tax and directs its payment into the state treasury, and the constitution then takes the subject from the sphere of legislative discretion, and decrees the uses to which the money must be appropriated.

It inevitably follows that by the conjoint operation of the statute and constitution, the object to which the tax

would be applied is made most distinct and certain, and no language in the act could make it more so.   I think it may well be doubted whether the men who framed the constitution, or the people who adopted it, proposed to require a thing so vain and fruitless as the re-enactment of the constitutional provision in every law imposing a tax like that in question.   The whole course of legislation, since the adoption of the constitution, has been upon the theory that no such necessity existed, and the opinion is believed to have been almost universal, that the section quoted was never intended to have the application now suggested.

The constitution itself, in continuing several laws imposing specific taxes, leaves the appropriation of the taxes to the standing provision of *Sec. 1* already quoted.— *Art. 14,* § *10,* also § *1* of schedule.

It is not unreasonable to suppose that *Sec. 14* was not intended to apply to cases in which the object of the tax should be found distinctly and unalterably fixed by the constitution itself.

I think, therefore, the court is not at liberty to hold the act to be invalid on the ground stated.

It is also insisted by the counsel for the plaintiff in error, that the constitution intended to limit the action of the legislature in the imposition of specific taxes to corporations created by the laws of this state, and that a tax on business is prohibited by implication.   The first branch of this objection is attempted to be supported by the supposition that the enumeration in *Art. 14,* § *10* of certain corporations as subject to the imposition of specific taxes, is a negative upon the right thus to tax any other organizations; and as giving color to the idea that the bodies so made liable were intended to be domestic corporations.

As it is not pretended that the express company is a corporation, it is only material for the present purpose to inquire whether the power to impose a specific tax is confined to corporations.

WALCOTT *v*. THE PEOPLE.

An examination of the power of the state government to raise a revenue, must always involve several considerations of the first importance.

As the necessities of the state, under all circumstances, could never be accurately measured in advance, nor the resources of the community, in all their possible changes and relations, be anticipated or conjectured, it would seem reasonable to suppose that a people, so well versed in political affairs as those of this state, would not purposely withhold from their own government the power to supply the public wants by any eligible method of taxation, or deny themselves the right of selection among the rightful objects of it. A contrary view would presuppose the deliberate establishment of government, and the equally deliberate denial of a power which might be ultimately necessary to enable it to accomplish the ends of its institution. That a course so extraordinary had been pursued, could never be admitted, except upon the clearest evidence.

The characteristics which distinguish incorporated from unincorporated companies, afford no sufficient reason for imputing any purpose to make the former subject to specific taxes and exempt the latter from them.

In number, amount of capital, and extent of operations, the latter hold a much larger place in the field of business enterprise than the former occupied half a century since.

Upon turning to the constitution, it will be observed that the first clause of *sec. 10*, before mentioned, declares expressly that the state may continue to collect all specific taxes accruing under existing laws. Several of the laws thus referred to, were of long standing, and imposed taxes upon business. Many of them applied to individuals, and not to corporations. The clause cited had the effect to "continue" these taxes.

It was a constitutional declaration in favor of specific taxes on the business of individuals, in so far as the same were then required by existing laws.

It determined that there was no objection in principle to the imposition of a specific tax on individual occupations, and no reason is perceived why the date of the law should change the principle. If, in the absence of constitutional prohibition, the state had the inherent right in 1850 to tax business and professions, it must have possessed the same right in 1851 and in 1867.

It is, however, insisted that the constitution inhibits the imposition of specific taxes, except on corporations created subsequent to the constitution. This proposition is supposed to be maintained by the second branch of *Art. 14.* § *10, of the Constitution.*

The whole section reads as follows: "The state may continue to collect all specific taxes accruing to the treasury under existing laws. The legislature may provide for the collection of specific taxes, from banking, railroad, plank road, and other corporations hereafter created."

It is not denied that the first branch of the section is permissive and not prohibitory; that it was intended as an express authority to continue the collection of specific taxes under the constitution to the extent then allowed by law, and it can not be denied that the clause standing with it, and which is relied upon by the plaintiff in error, as excluding the right to impose specific taxes, by subsequent laws, on anything except corporations, is conceived in language appropriate to a grant of power and not to a limitation. The position of the passage, and the admitted scope of the. paragraph associated with it, and the natural and ordinary meaning of the language concur in giving an interpretation opposed to inhibition.

To this it may be said that, considering the nature and object of a state constitution, there could have been no necessity for any such specific grant of legislative power; since, according to well settled principles, the particular authority would have been as clearly within the competency of the legislature without any such provision, as with it; and that,

therefore, the clause in question must have been intended to accomplish some other object than simply to confer the power to tax the organizations there described.

Without pausing to consider how far the doctrine that the legislative power of the state is unlimited, except as restricted by the fundamental law, may be pushed in any case, and especially in its application to a constitution containing much of administrative detail, it may be admitted that the clause in question was not needed simply as a grant of power, and was intended to effectuate another purpose.

In seeking for that purpose, we should look for it in some object which would be plainly satisfied by words of formal grant, and which would involve no incongruity or strained construction.

It is well understood that at a very early day the legislatures of several of the states assumed to grant charters of incorporation for banking and other purposes, and to insert stipulations upon various grounds, exempting the institutions wholly or in part from subsequent taxation.

This practice became at length so common, and operated so extensively in withdrawing corporate property from the burdens to which individual wealth was subject, that the powers of the courts were many times invoked against it.

The decisions of the tribunals were not entirely harmonious, but the great weight of authority favored the opinion that in the absence of any constitutional provision assuring the right to tax, the legislatures were empowered to stipulate for the exemption; and that if they did so, the charters would be in the nature of contracts, and stand protected by that clause of the federal constitution which forbade the passage of any law impairing the obligation of contracts.

The controversy on this subject was in progress when the present state constitution was framed and adopted.— *Seymour v. The Town of Hartford, 21 Conn. 481, and cases cited; Gordon v. The Appeal Tax Court, 3 How. 133; Ang.*

*and Ames on Cor.* § *478, and cases; State Bank of Ohio v. Knoop,* 16 *How. 869.*

This subject was one which must have engaged the attention of the convention, and it is reasonable to suppose that the necessity was not overlooked for some simple provision designed to assure the right to tax all corporations thereafter created. As the federal constitution would protect legislative agreements for exemptions from taxes in those cases only, in which the legislature, under the state constitution, could bind the state on that subject, it would follow that a constitutional provision ordaining the right to tax without qualification, would render nugatory the attempt of any legislature to bind the state by such an agreement. A contract by the legislature to exempt from taxes, in the face of a provision securing to the state the absolute right to tax, could derive no support from the constitution of the Union. The clause in question in the state constitution is perfectly adapted to secure the object. It assures the right without qualification, and it may, with reason, be concluded that such was the chief purpose of the provision. Such interpretation removes the difficulty involved in the view taken by the counsel for the plaintiff in error, and fairly meets the necessity of the case. To avoid misapprehension, however, it is proper to observe in this connection, that no opinion is expressed as to whether the clause in question would or would not permit any other application than that which is here accorded to it. The case calls for no such opinion.— *Commonwealth v. The People's Five Cents Savings Bank,* 5 *Allen, 428, 431, 432, 437, 438.*

The proposition that the tax imposed by the act is prohibited by constitutional implication can not be supported. Taxes of a similar kind, and standing on the same principle, are recognized as valid, and their collection authorized by the first clause of the tenth section, hereinbefore quoted; and the provision requiring a uniform rule of taxation, expressly excepts property paying specific taxes. The counsel

for the plaintiff in error maintained that the tax authorized by the act is intended to be imposed on "business," and not upon property, strictly so called.

This is undoubtedly correct, and it is the same in substance, as declaring that the tax belongs to a class of impositions for revenue, upheld in every state in the union. The constitution does not forbid a tax of this description, and there would seem to be no room for doubt as to the power of the legislature to impose it.— *Commonwealth v. The People's Five Cents Savings Bank*, before cited; *People v. Detroit and Pontiac R. R. Co. 1 Mich. 458.*

In the absence of any provision clearly evincing an intention to abandon the power in question, the purpose to relinquish it ought not to be presumed. It is not to be supposed that a matter of such vital consequence would have been left to turn on vague conjecture or shadowy implications.—*Providence Bank v. Billings, 4 Peters, 561.*

It is further urged on the part of the plaintiff in error, that the statute requires an interference with commerce, and is, consequently, repugnant to that clause of the federal constitution which gives to congress the power to regulate commerce with foreign nations and among the several states. As that constitution is the supreme law, any state constitution or statute in contravention of it must of course be void.

Hence, any state legislation, though warranted by the state constitution, will be invalid, if opposed to the constitution of the Union. And whether a particular act is founded on an express declaration of power in the state constitution, or on the original legislative authority inherent in the state government, the result will be the same, if the act is found to be in conflict with the constitution of the Union.

These observations are induced by the consideration that, in several instances, particular state laws and local ordinances, based upon express provisions of state constitutions, have

been questioned as opposed to the above mentioned clause in the federal constitution, and the subject of their validity has been thoroughly considered by the courts.

If we turn to the statute in question, it appears difficult to mistake its scope and object. It does not purport to be a mere regulation of commerce, but assumes to impose a tax on a particular kind of business. In order to carry out the object, certain means are authorized, and they appear to be appropriate. As, in many other cases, the law aims to apportion the tax according to the amount of subject matter on which it is imposed, and ordains the means for ascertaining that amount.

In all this, nothing is discovered in derogation of the federal constitution.

It is not improper, however, to refer to several cases which seem to place the question in a satisfactory light.

An ordinance of the city of Savannah required that, with certain exceptions, a tax of fifty cents on every hundred dollars should be levied on all goods, wares, and merchandize, not produced in Georgia, which should be sold on commission by any person or persons residing within the limits of the city, and that every such commission merchant should make just and true returns, on oath to the city treasurer, on the first day of January and the first day of May in each year, and, within ten days after making such returns, should pay the specified tax. The ordinance further provided that, if the proper returns should not be made, the treasurer should assess the tax and collect the same by distress. One Cummings, a commission merchant, having failed to make the required return, was proceeded against according to the ordinance, and the proceedings were reviewed on certiorari. It was claimed that the ordinance was repugnant to the before mentioned provision of the federal constitution, but the court, by *Berrien*, judge, held otherwise, and sustained the ordinance. — *Cummings v. The Mayor and Aldermen of Savannah, R. M. Charlton, 26.*

By a statute incorporating a railroad company, the legislature of Pennsylvania provided that all freight, except the ordinary baggage of passengers, carried or conveyed over the road, in each year, should be subject to toll or duty, for the use of the state, of three mills per ton per mile.

The Supreme Court of Pennsylvania held, that the act simply furnished a mode of taxing the company according to the magnitude of its business, and was not intended as imposing a tax on commerce, and that the statute was not in violation of the clause in the federal constitution giving to congress the power to regulate commerce. — *Pennsylvania R. R. Co. v. The Commonwealth, 3 Grant, 128.*

The revised laws of Indiana contained a statute as follows: "Every person who shall, in proper person, or by an agent, vend any merchandize which may not be the product of the United States, without having a license or permit so to do, as is or may be designated by law, shall be fined in any sum not exceeding one hundred dollars."

One Beall was indicted under this statute for retailing tea without license or permit to vend foreign merchandize, and he rested his defense on the claim that the statute was an infringement of the federal provision before mentioned; but the Supreme Court of Indiana held that the act was authorized and valid. — *Beall v. The State, 4 Blackf. 107.*

By an act passed in 1842, the legislature of Louisiana ordained that each and every money or exchange broker should thereafter pay an annual tax of $250 to the state, in lieu of the tax theretofore imposed.

One Nathan was prosecuted by the state for the tax, and he insisted that so much of the act as imposed a tax on that part of his business as a broker, which consisted in buying and selling exchange, was in violation of the federal provision as to the regulation of commerce. The Supreme Court of the state overruled the defense, and maintained the law, and the case was removed to the Supreme Court of the United States. It was there strenuously

insisted that the sole business of the defendant was buying and selling foreign bills of exchange, which were instruments of commerce, and that, therefore, the tax was repugnant to the provision· in question, but the federal tribunal affirmed the judgment of the state court. Some portions of the opinion pronounced in this case in the federal court may be appropriately quoted in this connection. The court say: "The right of a state to tax its own citizens for the prosecution of any particular business or profession within the state has not been doubted, and we find that in every state, money or exchange brokers, venders of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern keepers, auctioneers, those who practice the learned professions, and every description of property, not exempted by law, are taxed." "Money is admitted to be an instrument of commerce, and so is a bill of exchange; and, upon this ground, it is insisted that a tax upon an exchange broker is a tax upon the instruments of commerce. What is there in the products of agriculture, of mechanical ingenuity, of manufactures, which may not become the means of commerce? And is the vender of these products exempted from state taxation, because they may thus be used? Is a tax upon a ship, as property, which is admitted to be an instrument of commerce, prohibited to a state? May it not tax the business of ship building the same as the exercise of any other mechanical art? And also the traffic of ship chandlers and others, who furnish the cargo of the ship and the necessary supplies? There can be but one answer to these questions. No one can claim an exemption from a general tax on his business within the state, on the ground that the products sold may be used in commerce."

"A cotton broker may be required to pay a tax upon his business, or by way of license, although he may buy and sell cotton for foreign exportation."

"The taxing power of a state is one of its attributes of sovereignty. And where there has been no compact with

the federal government, or cession of jurisdiction, for the purposes specified in the constitution, this power reaches all the property and business within the state, which are not properly denominated the means of the general government, and, as laid down by this court, it may be exercised at the discretion of the state. The only restraint is found in the responsibility of the members of the legislature to their constituents. If this power of taxation by a state within its jurisdiction may be restricted beyond the limitations stated, on the ground that the tax may have some indirect bearing on foreign commerce, the resources of a state may be thereby essentially impaired. But state power does not rest on a basis so undefinable. Whatever exists within its territorial limits in the form of property, real or personal, with the exceptions stated, is subject to its laws; and also the numberless enterprises in which its citizens may be engaged. These are subjects of state regulation and state taxation, and there is no federal power under the constitution which can impair this exercise of state sovereignty."— *Nathan v. The State of Louisiana, 8 How. 73.*

The practice of the state governments, from the time of the establishment of the federal constitution, has been conformable to the principles here declared, and instances of the practice are very numerous.

They may be found scattered through the statutes of the different states, and are often brought to notice in the law reports.

The following are a few additional cases in which similar revenue regulations have been considered. — *Barnaby v. The State, 21 Ind. 450; Weister v. Hade, 52 Penn. 474; New Orleans v. Turpin, 13 La. An. 56; Tatem v. Wright, 3 Zab. 429; The State v. City Council of Charleston, 4 Rich. 286; Padleford v. Mayor of Savannah, 14 Ga. 438; New Orleans v. Clark and Brisbin, 15 La. An. 614; State of Louisiana v. C. Lathrop, agent, 10 La. An. 398; Fire Department v. Noble, 3 E. D. Smith, 440; Fire Department*

*v. Wright, 3 E. D. Smith, 453; People v. Imlay, 20 Barb. 68; The State v. Branin, 23 N. J. (3 Zab.) 484; Berks Co. v. Bertolet, 13 Penn. 522; Raguet v. Wade, 4 Ham. 107; Eagan v. County Court, 3 Har. & McHen. 169; Coite v. The Society for Savings, 32 Conn. 173, and cases; The Parker Mills v. Commissioners of Taxes, 23 N. Y. 242; The State v. Gazlay, 5 Ham. 14; People v. Thurber, 13 Ill. 554.*

Upon full consideration, it is believed that the act of 1867 is not opposed to the federal constitution on the ground stated, and as this disposes of all questions arising under the assignment of error, I think the judgment below should be affirmed with costs.

COOLEY CH. J. concurred.

CAMPBELL J.

The only question in this case is whether the statute requiring all express companies to pay a specific tax on the gross amount received on their current business in this state within the previous year, is valid.

I agree that, if such business not conducted by corporations can be taxed specifically, the law is not rendered invalid by not directing how the tax shall be appropriated. The constitution leaves nothing to be done on this subject, as it appropriates all such taxes directly.

But I think such taxes are not authorized by the constitution, and that the provisions in the article on "Finance and Taxation" are so explicit as to exclude any inference on the subject. And if any argument is derivable from our history upon the construction of this language, I think it is not such as is drawn by my brethren.

Where a constitution is entirely silent upon the subject, a legislature has as much right to resort to specific taxation as to any other, so long as it follows the cardinal principle underlying all taxation that it shall be based on some rule,

and not be an arbitrary exaction. Such taxes are in no sense odious merely because specific. Under our former constitution, which contained no restrictions, specific taxes were imposed upon several classes of business, either by way of license or percentage, where a tax on property would not have reached the case, and also upon corporations of various kinds, where it was deemed more likely, on the whole, to operate wisely than the ordinary system of local assessments. In some cases this was provided for by charter, and in others it was done by statute, where there was nothing in the charter to the contrary. It had been settled many years before by the Supreme Court of the United States, that where such provision was made by contract, it was binding, but that where a charter was silent on the subject, the legislature could do as they pleased. Both of these doctrines were recognized in the case of *The People v. The Detroit and Pontiac R. R. Co. 1 Mich. 458,* and treated there, as elsewhere, as principles not open to serious controversy. The constitution of 1850, instead of keeping silence, which would have implied full legislative authority, covered the whole ground of taxation by specific enactment. And in these provisions, as it seems to me, the intent is too clear to permit any conjecture as to policy to have any great weight. Nor do I think the reasons suggested by my brethren, for these provisions, consistent either with contemporaneous history or with the context.

The very first section of the article on "Finance and Taxation" relates to specific taxes. It appropriates them towards the principal and interest of the state indebtedness until all is paid except that due to the educational funds. Then they are all payable into the school fund; and, to save any doubt on this subject, the state is bound, by the same section, to pay all its expenses, as well as any other deficiency in revenue, by an annual tax, which must, of course, be levied by the ordinary system of assessment. Here, then, we have, in the outset, a provision which (except

by a subsequent modification in favor of the Upper Penin-
sula — *Art. 19*, § *8*,) prevents any portion of these specific
taxes from contributing towards any of the ordinary burdens
of the state, or of town, county, or other local necessities.
And it is notorious, and appears throughout the entire de-
bates of the convention, that instead of desiring these spe-
cific taxes to be multiplied at the expense of the local in-
terests, the feeling was all the other way, and, except so far
as prevented by contract, the legislature, while restricted in
imposing specific taxes, is authorized to abolish them entirely.

Section ten is in these words: " *The state may continue
to collect all specific taxes accruing to the treasury under
existing laws.    The legislature may provide for the collec-
tion of specific taxes from banking, rail road, plank road,
and other corporations hereafter created.*" These words are
permissive in form, and are such as are usually interpreted
as excluding what is not mentioned, by the express power
granted.    The words were needless and senseless as mere
grants of power, because the power would have existed with-
out them.    They can only be made sensible by regarding
them as restrictive.    But when we go further, we can see
why this form of permission was used.    The two next sec-
tions provided the general rule to which these were to form
the exceptions, and thus rendered the whole group sensible
and harmonious.

Section 11 declares that " *the legislature shall provide an
uniform rule of taxation, except on property paying specific
taxes; and taxes shall be levied on such property as shall be
provided by law.*"

And. section 12 declares that " *All assessments hereafter
authorized, shall be on property at its cash value.*"

Taking these sections together, and reading them accord-
ing to their natural construction, the conclusion seems una-
voidable that taxation by an assessed valuation of property
must be the rule, and specific taxation the exception.    If
specific taxes were allowed to be used for the same public

purposes with other taxes, there might be force in the suggestion that by prohibiting them, except in a few cases, the state cuts off a possible source of revenue, which, in times of emergency, it might be desirable to retain. But the argument is almost as strong the other way, when it is considered that practically nearly every levy of specific taxes cuts off a portion of revenue that would be otherwise available. But the argument of inconvenience can not, in either direction, weigh against the express language of the constitution; nor is it admissible, upon any theory whatever, to import unnatural meanings where the natural reading is consistent.

There was a manifest reason for allowing specific taxes to be continued under existing laws, for some had been fixed by contract, and others imposed for conformity, and the few remaining classes were mostly, if not entirely, upon occupations of a peculiar character. But in regard to these latter, no provision is made for future legislation, very probably because it would be somewhat difficult to open the door without opening it too widely — while the propriety of specific taxes on corporations, whose property is fluctuating and not always accessible, is plain enough, and justice would seem to require that new ones might be put on the same footing with the old.

But it is not plain to my comprehension how a permission, granted to the legislature to levy specific taxes on corporations, can be construed as designed, merely or chiefly, if at all, to prohibit them from entering into arrangements to relieve them from taxation. It is certainly a very awkward and indirect way of expressing an idea, which, if entertained at all, would, I think, have been deemed important enough to be made clear. It would have been quite easy to say in so many words, that the legislature shall not be at liberty to relieve, or to bind itself to relieve future corporations from specific taxation, and this would have left no ambiguity.

But there are other considerations which are not without weight on this subject. In the first place, I believe there has never been a case of prominence, if there has been a case at all, in any court, where the contest has been by a corporation to get rid of specific, and to subject itself to general taxation. There have been cases where they have relied on their charters to preserve them from any but specific taxation, and others where they have sought to avoid all taxation. But a condition merely preventing a legislature from giving up specific taxation, and yet not preventing them from making it infinitesimal, could certainly serve no good purpose.

In the next place, by this constitution, no new corporation can be chartered at all by special act, and all general laws are made subject to alteration, amendment and repeal; so that the mischiefs which might possibly have arisen under a system of special charters, could not easily arise, and it is very certain no such apprehension was ever current at the time.

Moreover, the power of exemption, which is absolutely unlimited except by the common sense of the legislature, is entirely inconsistent with any such idea. Multitudes of corporations, before and since the adoption of this constitution, have been exempted from taxation. Charitable and educational, as well as religious, corporations have always been thus exempted. Taxes are only to be laid " *on such property as shall be prescribed by law.*" These exemptions have been enforced repeatedly by this court. And in the case of the *People v. Auditor General, 7 Mich. 84,* it was held, upon an elaborate constitutional argument, by the whole court, that such exemption might be the subject of contract.

I am, therefore, of the opinion that this law is invalid, because it lays a specific tax prohibited by the constitution.

It is also claimed that this tax is invalid under the constitution of the United States, so far as it applies to the

carrying business between this state and other states or countries. I think this claim is also correct. The regulation of external commerce is not under state control. The right to carry it on is not a right derived from state authority. It has been the uniform doctrine of the Supreme Court of the United States, that a state can not prohibit such commerce, directly or indirectly, and that it can not tax that which does not depend upon its authority. This doctrine, which was first asserted in *McCulloch v. Maryland, 4 Wheat. 316*, rests upon the clear and intelligible basis, that the full sovereignty of a state extends only to that "which exists by its own authority, or is introduced by its permission"; that the power to tax includes the power to make taxation prohibitory, and that what a state has no right to regulate and control completely, it has no right, therefore to tax. Accordingly, in addition to the numerous cases which have excluded state taxation of government agencies, there are many decisions inconsistent with similar interference with private commerce. The first of these was the leading case of *Gibbons v. Ogden, 9 Wheat. 1,* which drew the line between internal and external commerce. Next came *Brown v. Maryland, 12 Wheat. 419,* which, holding a tax on importers invalid, upon several grounds, adopted on this branch of the argument as conclusive the reasoning in the former case of *McCulloch v. Maryland,* and abstained from repeating it. And it is somewhat remarkable that, as one reason why an importer could not be taxed as such, the court say that if this could be done, "what should restrain a state from taxing any article passing through it from one state to another for the purpose of traffic, *or from taxing the transportation of articles passing from the state itself to another state for commercial purposes?*" The very case now before us is assumed to be one of the things beyond even a question. In *Sinnott v. Davenport, 22 How. 227,* and *Foster v. Davenport, Id, 244,* it was held a state could not compel vessels, engaged in external commerce, to report at state offices, as it

had previously held in the *Passenger cases, 7 How. 283,* that taxes on passengers were void, as interfering with the freedom of commerce.   So in *Hays v. Pacific Mail Steamship Co. 17 How. 596,* it was held that, steamers owned in New York, and running between California and other Pacific ports, could not be taxed in California.   And in *Almy v. State of California, 24 How. 169,* it was held a stamp duty on bills of lading was also invalid.   The cases which have held certain taxes valid as not affecting commerce — such as the alien succession tax in *Mager v. Grima, 8 How. 490,* and the exchange brokers' tax, in *Nathan v. Louisiana, 8 How. 73,* have never relaxed the rule where commerce is supposed to be affected; and where the tax is, as here, directly on the carrying trade, no such doubt could arise.   As that is the court which will review this case, I do not deem it necessary to consider the decisions of other tribunals, which have possibly taken very changing views on the subject. But in *Oliver v. The Washington Mills, 11 Allen 268,* the Supreme Court of Massachusetts held that a corporation could not be lawfully compelled to make deductions from the dividends of non - resident shareholders as such, and pay them into the state treasury; and in the *Erie Railway v. The State of New Jersey, 4 Am. L. Reg. N. S. 238* the Court of Appeals of New Jersey reversing the judgment of the Supreme Court, held the transit tax invalid for the same reasons.   And I feel confident that, while courts may have differed upon the application of these rules, they have very rarely assumed to deny them.

I think the judgment should be reversed.

CHRISTIANCY J. did not sit.