THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant, v. G. FRANK MEALEY et al., Constituting the Board of Assessors of the City of Troy, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. TROY UNION RAILROAD COMPANY, Appellant, v. G. FRANK MEALEY et al., Constituting the Board of Assessors of the City of Troy, Respondents.

**Tax — municipal corporation — contract with railroad corporation as to exemption from taxation for amount greater than capital stock — enactment of statute permitting such exemption — when such statute gratuitous and not operative as a contract — repeal of such statute not invalid as impairing obligations of a contract.**

1. When the state through its legislature grants a franchise, privilege or exemption to a corporation either in the act incorporating it, or by other legislation followed by action of the corporation under or in reliance upon the grant so made, it constitutes a contract, based on a valuable consideration, the obligation of which cannot be impaired by subsequent legislation. But the consideration must be actual and not merely speculative and it must have been induced by the grant from the legislature of the franchise privilege or exemption.

2. Where, by an agreement between the city of Troy and a railroad corporation organized under the General Railroad Law of 1850 (L. 1850, ch. 140), it was agreed that the common council of the city should join in an application to the legislature that the railroad company be exempt from taxation upon an amount exceeding its capital stock, and subsequently a statute was enacted (L. 1853, ch. 462)

188  People ex rel. N. Y. C. & H. R. R. R. Co. *v.* Mealey.

[224 N. Y.]          Statement of case.          [July,

which provided that for the purposes of taxation the property of the railroad company should be estimated and assessed, as by said contract it was agreed that it should be, at the amount of the capital stock of said company and no more, the statute, although it refers to the agreement, was not a consummation or ratification of an agreement the enforcement of which depended upon the granting of the act. No acceptance of the provisions of the statute was necessary to make it effectual and, hence, the exemption was nothing other than a privilege.

3. The statute of 1853, granting exemption from taxation to the railroad company as provided in the contract between the company and the city, being gratuitous and not based upon a consideration, its repeal by a subsequent act (L. 1909, ch. 201) was not in contravention of the Constitution of the United States (Art. 1, § 10, subd. 1) as an impairment of the obligation of a contract, but was the withdrawal by the legislature of its assent to the exemption from taxation.

4. As the property is sufficiently described on the assessment roll to reasonably identify and indicate to a person familiar with the same the particular property which it was intended to assess, it is not invalid for any cause arising from ignorance or mistake as to the names of the owner or owners of the property assessed, whether individually or a corporation. (Second Class Cities Law [Cons. Laws, ch. 53], § 161.)

*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealy,* 179 App. Div. 951, affirmed.

(Argued June 3, 1918; decided July 12, 1918.)

APPEAL, in each of the above-entitled proceedings, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered August 6, 1917, which affirmed an order of Special Term quashing a writ of certiorari and dismissing the petition of the relator for the review of an assessment levied against it for purpose of taxation for the year 1911 upon its property in the city of Troy.

The facts, so far as material, are stated in the opinion.

*Lewis E. Carr* and *William L. Visscher* for appellants. The act of 1909 purporting to repeal chapter 462 of the Laws of 1853, the Exemption Act, was not a valid enact-

ment. Its effect was to impair the obligation of a contract and its enactment was forbidden by subdivision 1 of section 10 of article 1 of the Constitution of the United States. (*Justice* v. *Lang,* 42 N. Y. 493; *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *People* v. *O'Brien,* 111 N. Y. 1; *People ex rel. T. U. R. R. Co.* v. *Carter,* 52 Hun, 458; *New Jersey* v. *Yard,* 95 U. S. 104; *Humphrey* v. *Peynes,* 16 Wall. 244; *Pearsall* v. *G. N. Ry. Co.,* 161 U. S. 646; *Wright* v. *G. R. R. Co.,* 216 U. S. 420; *Farrington* v. *Tennessee,* 95 U. S. 679, 685, 689; *New Jersey* v. *Anderson,* 203 U. S. 483; *Home of the Friendless* v. *Rouse,* 8 Wall. 430.) The contract of 1858 did not in terms or legal effect transfer the title of the Troy Union Railroad Company to its railroad, passenger station and other property from that company to the stockholders of that company, and the assessment against them therefor was erroneous and illegal. (*Ten Eyck* v. *Whitbeck,* 156 N. Y. 341; *Despard* v. *Churchill,* 53 N. Y. 192; *Averill* v. *Taylor,* 8 N. Y. 44; *Bennet* v. *Crain,* 41 Hun, 183.)

*Thomas H. Guy,* Corporation Counsel (*George B. Wellington* of counsel), for respondents. Chapter 201 of the Laws of 1909 is valid. (*People ex rel. T. U. R. Co.* v. *Carter,* 52 Hun, 458; *Rector, etc.,* v. *County of Philadelphia,* 24 How. [U. S.] 300; *People ex rel.* v. *Comm.,* 47 N. Y. 501; *Tucker* v. *Ferguson,* 22 Wall. 527; *W. W. R. Co.* v. *Supervisors,* 3 Otto, 595; *City of Rochester* v. *R. Ry. Co.,* 182 N. Y. 99; *Union Passenger R. Co.* v. *Philadelphia,* 11 Otto, 528; *People ex rel.* v. *Gass,* 190 N. Y. 323; *People ex rel. Carter* v. *Rice,* 135 N. Y. 473.) Assuming that the Exemption Act of 1853 is in force, nevertheless the interests of the New York Central and Hudson River Railroad Company and of the other companies are taxable at their full value. (*Jenkins* v. *Fahey,* 73 N. Y. 355; *Tamsen* v. *Schaefer,* 108 N. Y. 604; *Williams* v. *Haddock,* 145 N. Y. 144; *Pollock* v. *F. L. & T. Co.,* 157 U. S. 589;

*Hays* v. *Miller,* 6 Hun, 320; *Smith* v. *Mayor, etc.,* 68 N. Y. 552; *People ex rel.* v. *Cassidy,* 46 N. Y. 46; *Bowdoin College* v. *Merritt,* 75 Fed. Rep. 480; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425; *Reynolds* v. *C. F. Ins. Co.,* 47 N. Y. 597; *Jackson* v. *Dunsbagh,* 1 Johns. Cas. 91; *French* v. *Carhart,* 1 N. Y. 96; *Mount* v. *Hambley,* 33 App. Div. 103.)

Chase, J.   In 1911 the assessors of the city of Troy placed on the assessment roll of said city an assessment as follows:

" Troy Union Railroad Co., Boston and Maine Railroad
Co., Delaware and Hudson Railroad Co., New York
Central and Hudson River Railroad Co.

" The lands of· roadbed and adjacent thereto in the several wards of the City, with rails, superstructures, depot buildings and appurtenances being all the railroad property in the City of Troy located between Madison St. on the south, Hoosick St. on the north and the approach of the Delaware and Hudson Company's bridge on the west, excepting that portion assessed as franchises lying in public streets.

" (Valuation, $1,000,000.) (Real property.)

" Special franchise, 1911, $215,400."

The Troy Union Railroad Company and the New York Central and Hudson River Railroad Company each obtained a writ of certiorari to review the assessment. The statements hereinafter made are applicable to each proceeding.

A referee was appointed to take evidence upon the issues therein and report the same to the court with his findings of fact and conclusions of law.  He reported in favor of dismissing the petition and quashing the writ.  The proceedings including the evidence taken by the referee and his findings of fact and conclusions of law then came up for determination at the Special Term

and the court affirmed the report of the referee and also made new findings and the petition was dismissed and the writ of certiorari quashed. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealy* and *People ex rel. Troy Union R. R. Co.* v. *Mealy*, 88 Misc. Rep. 649.) An appeal was taken to the Appellate Division of the Supreme Court. The order was there unanimously affirmed on the opinion of CHESTER, J., at the Special Term. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealy* and *People ex rel. Troy Union R. R. Co.* v. *Mealy*, 179 App. Div. 951.)

An appeal has been taken to this court from the order entered thereon.

In 1851 four railroad companies each had the terminus of its road in the city of Troy. Each company generally propelled its cars on tracks by steam power, but the steam power was not used within the limits of the city of Troy. Within the city limits the cars were drawn by horses on tracks in public streets leading to the central business part of the city. It does not appear that either company maintained a building in the city for the use of passengers.

By chapter 255 of the Laws of 1851 it was provided: "The corporation of the city of Troy, and the several railroad corporations whose railroads now or hereafter shall come to the city of Troy, or which have or shall have their business terminus in, or run their trains to and from said city, may subscribe for and become the owners of stock in a railroad corporation to be organized under" the General Railroad Act of 1850 (Laws of 1850, chapter 140).

It was also therein provided that the corporation of the city of Troy might "borrow upon the bonds of said city, redeemable in not more than twenty years, at an annual interest of six per cent, a sum not exceeding the cost of the construction of such railroad; but no bonds

192  People ex rel. N. Y. C. & H. R. R. R. Co. v. Mealey.

[224 N. Y.]          Opinion, per Chase, J.          [July,

shall be issued therefor by the corporation of said city until said corporation shall, by the several railroad corporations which are authorized to subscribe for stock by the first section of this act, and also by a mortgage on the railroad so to be constructed, its capital stock and franchises, be fully indemnified and made harmless against the payment of any bonds and the interest thereon which said city of Troy may issue under the authority of this act."

On July 31, 1851, articles of incorporation of the Troy Union Railroad Company were filed pursuant to said General Railroad Law of 1850. They provided that the capital stock of the company should be $30,000.

On the 3d day of December, 1852, a contract was entered into by and between the mayor, recorder, aldermen and commonalty of the city of Troy of the first part, Troy Union Railroad Company of the second part and the four railroad companies mentioned of the third, fourth, fifth and sixth parts. The state of New York was not a party to the contract. The contract recited the organization of the Troy Union Railroad Company for the purposes provided by the act of 1851 — the appointment of commissioners under said act — and the location of the railroad in the city of Troy according to a survey thereof, a copy of which was made a part of the contract — and in substance that the four railroad companies mentioned had subscribed for all of the capital stock of the Troy Union Railroad Company. It also provided for a loan of money by the city of Troy to the Troy Union Railroad Company and for tolls to be paid to the Troy Union Railroad Company by the railroad companies using the tracks in the city of Troy.

It was also therein provided as follows:

" 17. The party of the first part agrees that the common council of the city of Troy shall join in an application to the legislature of the State of New York

that the Troy Union Railroad Company be exempt from taxation upon an amount exceeding the present amount of its capital stock  *  *  *  and if such law shall not be passed the common council of the city of Troy shall refund to the Troy Union Railroad Co. an amount equal to the city taxes imposed on the Troy Union Railroad Company for any calculation exceeding its present capital stock  *  *  *."

Within a few days thereafter the Troy Union Railroad Company executed and delivered to the city of Troy a mortgage on its road, property and franchises to secure the payment of the principal and interest on the bonds issued by the city to raise money for the Troy Union Railroad Company and the four other railroad companies, parties to the agreement, executed and delivered to the city of Troy an agreement by which they indemnified the city of Troy against any default of the Troy Union Railroad Company upon its mortgage. The agreement also contained many provisions not important in determining the question before us.

On June 24, 1853, the legislature passed an act (Laws of 1853, chapter 462) which provided: " For the purposes of taxation in the city of Troy, and in the county of Rensselaer, the property of the Troy Union Railroad Company shall be estimated and assessed (as the common council of said city of Troy, by its contract with said company, dated December third, eighteen hundred and fifty-two, agreed that the same should be) at the amount of the capital stock of said company, and no more.  *  *  *"

The parenthetical statement in the act as to the contract with the common council of the city of Troy is not in accordance with the fact. The contract on the part of the mayor, recorder, aldermen and commonalty of the city of Troy was, that the common council shall join in an application to the legislature of the state of

13

New York to exempt the Troy Union Railroad Company
from taxation upon an amount exceeding the capital
stock of the Union Company. It further contracted that
in case the legislature did not pass such an act, the
common council would refund to the Troy Union Rail-
road Company an amount equal to the *city taxes* imposed
on the Union Company for a valuation exceeding its
then present capital stock. It thus appears that the
contract of 1852 did not pretend to be and was not in
fact a contract that the Union Railroad Company should
be exempt from taxes for an amount on a valuation
exceeding its capital stock. It also appears that the
agreement in regard to refunding taxes as therein provided
in no way refers to the *county of Rensselaer*. The act
of 1853 assented to and provided for an exemption as
therein stated but it did not make the state a party
to the contract and it was in no sense a ratification of
a contract for exemption theretofore made by the city
of Troy. After the act of 1853 and prior to the year
1858 the Troy Union Railroad Company defaulted in
paying the interest on the bonds of the city of Troy
issued pursuant to said contract and an action was
commenced to foreclose the mortgage of the railroad
company. On July 1st, 1858, another agreement was
entered into by and between the same parties as in the
agreement of December 3, 1852, which recited the act
of 1851, the organization of the Troy Union Railroad
Company and the construction of its road in the city
of Troy, the receipt of money therefor from said city,
and the execution of the mortgage as security for the
bonds executed by the city of Troy for the money so
advanced to the railroad company and the fact that an
action had been commenced to foreclose said mortgage
and provided:

"The parties hereto for the purpose of settling the
matters involved in said suit and for the purpose of

1918.]                    Opinion, per Chase, J.,                [224 N. Y.]

reforming the contract entered into by or on behalf of the above named parties bearing date the third day of December, 1852, adopt this instead of and in place of said contract *which is hereby annulled.*"

It was therein provided that the railroad companies operating roads within the city of Troy should pay upon monthly assessments the necessary expenses and the indebtedness of the Troy Union Railroad Company as therein directed, and the rights and authority of the Troy Union Railroad Company and the other railroad companies included in said agreement were stated and it was therein further provided:

" *Eleven.* The party of the first part agrees that if the law passed by the legislature of the state of New York, June 24, 1853, relative to the taxation of the property of the Troy Union Railroad Company in Troy shall at any time be repealed the common council of the city of Troy shall join in an application to the legislature of the state of New York that the Troy Union Railroad Company be exempt from taxation upon an amount exceeding the present amount of its capital stock  *  *  *  and if such law shall not be passed the common council of said city of Troy shall refund to the Troy Union Railroad Company an amount equal to the city taxes imposed upon the Troy Union Railroad Company for any valuation exceeding its present capital stock  *  *  *."

The act of 1853 was not repealed until 1909. From the organization of said Troy Union Railroad Company until the year 1885 the property of said company was assessed each year at $30,000.

In each of the years 1886 and 1887 the then assessors of the city of Troy assessed the Troy Union Railroad Company for its railroad station and other property in the city of Troy, the sum of $783,984. A proceeding was commenced by certiorari on behalf of the Troy Union Railroad Company to have the assessment for

said years reduced to $30,000. The trial court decided that the relator was entitled to a reduction of the assessment to the sum of $30,000, and an order was entered in accordance with said decision. An appeal was taken therefrom to the General Term of the Supreme Court where the court held (*People ex rel. Troy Union Railroad Co.* v. *Carter*, 52 Hun, 458, 461) that the act of 1853 is practically an act that all property of the company beyond the amount of $30,000 shall be exempt and the court further say: " This may be unjust to other persons, natural and artificial in the state, but the injustice, if any, is one that we cannot redress. *The power is in the legislature."*

On appeal to the Court of Appeals the order was affirmed without opinion (*People ex rel. Troy Union Railroad Company* v. *Carter*, 117 N. Y. 625).

It is stated that the *Carter* case was to determine whether the act of 1853 so long as it remained unrepealed was a lawful act of exemption. Its validity was therein upheld. The decision did not in any way pass upon the effect of repealing the act of 1853.

By chapter 201 of the Laws of 1909 the legislature repealed the act of 1853. The assessment of 1911 was made subsequent to the repeal of said act.

This appeal presents the question whether the act of 1909 is in violation of article 1, section 10, subdivision 1, of the Constitution of the United States as an impairment of the obligation of the contracts of 1852 and 1858 or either of them.

It is provided by the Constitution of the United States that " No state shall * * * pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts * * *." (Article 1, sec. 10, subd. 1.)

When the state through its legislature grants a franchise, privilege or exemption to a corporation either in the act incorporating it, or by other legislation followed

by action of the corporation under or in reliance upon the grant so made, it constitutes a contract, based on a valuable consideration, the obligation of which cannot be impaired by subsequent legislation. (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheaton, 518; *People* v. *O'Brien*, 111 N. Y. 1, 49; *New Jersey* v. *Yard*, 95 U. S. 104; *Wilmington R. R.* v. *Reid*, 80 U. S. 264; *City of Rochester* v. *Rochester Rway. Co.*, 182 N. Y. 99.)

The consideration must be actual and not merely speculative and it must have been induced by the grant from the legislature of the franchise privilege or exemption.

The contracts hereinbefore mentioned and the acts of 1853 and 1909 must be construed in recognition of the rule of law relating to exemptions from taxation. The act of 1853 must also be construed in view of the obligations of the parties to the contract of 1852, under the terms thereof and also in view of the acts of the railroad companies thereunder so far as they were consummated prior to the passage of said act of 1853.

In *Yazoo & Miss. Val. Rway. Co.* v. *Adams* (180 U. S. 1, 22) the court say: " Exemptions from taxation are not favored by law, and will not be sustained unless such clearly appears to have been the intent of the legislature. * * *. Such contract should receive a strict interpretation, and every reasonable doubt be resolved in favor of the taxing power. Indeed, it is not too much to say that the courts are astute to seize upon evidence tending to show either that such exemptions were not originally intended, or that they have become inoperative by changes in the original constitution of the companies." (See *City of Rochester* v. *Rochester Rway. Co., supra.*)

In the *City of Rochester* case this court say: " The true test of whether there was any consideration for the exemption granted by the statute is whether any acceptance of its terms and provisions was necessary to make

it effectual.   If not, how can it be said that the exemption is other than a privilege?"  (p. 116.)

The legislature of the state of New York did not by special act grant the charter to the Troy Union Railroad Company.   That company was incorporated in 1851 under the General Railroad Act of 1850 and its stock was fully subscribed prior to 1853.   Prior to the passage of the act of 1853 contracts had been made for the construction of the road in said city of Troy, and of the passenger house therein as provided by the contract of 1852, and the work under said contracts had been partially performed.   As hereinbefore stated the mortgage and the agreements as in the contract provided had been executed.   Five hundred thousand dollars of the bonds of the city of Troy were issued in January, 1853, and prior to the passage of the act of 1853 the money from the sale of said bonds had been wholly or in part used for the purposes provided by the contract.   Prior to that time all of the real property mentioned and described in the assessment had been acquired by the Troy Union Railroad Company except a few parcels of little importance or value acquired some time thereafter. At that time all or substantially all of the provisions of the contract of 1852 had been fully performed or contracts had been made therefor on which the Troy Union Railroad Company was obligated.   Indeed every obligation provided by the contract of 1852 had at that time become fixed, determined and unrevocable.   The act of 1853 was not an amendment of a charter previously granted by the legislature but an independent act in response to a request therefor in which the city of Troy joined.   The contract of 1852 contained provisions which we have quoted that may in part have induced its execution but the contract was executed and the undertaking therein provided for was entered upon and every obligation thereof fully assumed from which

the parties thereto could not recede before the legislature passed the act of 1853.

The act was not a consummation or ratification of an agreement the enforcement of which depended upon the granting of the act. No acceptance of the provisions of the act of 1853 was necessary to make it effectual. In the language of this court quoted how can it be said that the exemption is other than a privilege?

It appears from the contract of 1858 made by the same parties as those to the contract of 1852 that it was well known and recognized by them that the act of 1853 was gratuitous and not based upon a consideration and that the legislature might at any time thereafter repeal the same. This appears in the provision of the contract of 1858 that we have quoted, in which it is provided that if the legislature shall repeal the act of 1853 the common council of the city of Troy shall in substance join in a further application to the legislature for the exercise by it of the authority then existing in the legislature to relieve the Troy Union Railroad Company from taxation as therein stated. The act of 1909 was not an impairment of a contract but the withdrawal by the legislature of its assent to the exemption.

We do not in any way pass upon the question, under the contract of 1858, of the liability of the city of Troy to refund to the Troy Union Railroad Company an amount equal to the city taxes imposed upon the Troy Union Railroad Company for any valuation exceeding $30,000.

The assessment is not invalid even if the legal title to the property assessed is in the Troy Union Railroad Company.

The corporations named in the assessment other than the Troy Union Railroad Company are the successors in interest of the four railroad companies named in the contracts of 1852 and 1858. Each of said companies

have rights and privileges in the tracks, passenger house and other property of the Troy Union Railroad Company as provided by the agreement of 1858.

What we have said in this opinion makes it unnecessary at this time to define the rights and privileges of the relator, the New York Central and Hudson River Railroad Company, in the property assessed. The assessment is of real property. It is provided by section 9 of the Tax Law, as amended by chapter 315 of the Laws of 1911, as follows: " Real property shall be assessed in the tax district in which it is situated. In all cases the assessment shall be deemed as against the real property itself, and the property itself shall be holden and liable to sale for any tax levied upon it."

As the property is sufficiently described on the assessment roll to reasonably identify and indicate to a person familiar with the same the particular property which it was intended to assess, it is not invalid for any cause arising from ignorance or mistake as to the names of the owner or owners of the property assessed whether individually or a corporation. (Second Class Cities Law [Cons. Laws, ch. 53], sec. 161.)

The order in each case should be affirmed, with costs.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN, CARDOZO and MCLAUGHLIN, JJ., concur.

Orders affirmed.