NAGLEBAUGH *v.* HARDER & HOFER COAL MINING
COMPANY.

[No. 2,501.   Filed Oct. 11, 1898.   Rehearing denied Feb. 14, 1899.]

TRADE CHECKS.—*In Payment for Labor.—Not Enforceable When Issued in Violation of Statute.—Assignments.*—Brass checks issued to employes for work and labor, in violation of section 7060, Burns' R. S. 1894, cannot, in the hands of an assignee, be made the foundation of an action against the employer by whom they were issued.

From the Sullivan Circuit Court.   *Affirmed.*

*Otis Parker* and *Pigg & Brown*, for appellant.

*John S. Bays*, for appellee.

WILEY, J.—The only question presented by the record is the action of the court in sustaining a demurrer to the complaint. The appellant was plaintiff, and, refusing to amend, judgment was rendered against him for costs.

The complaint is in two paragraphs. In the first it is charged that appellee is a corporation; that it owned and operated a coal mine; that it employed a large number of men in mining coal; that for three years appellee issued to and circulated among its employes brass checks, which represented money due such employes for labor; that said checks were payable at the store of Patton & Baldridge, at Grammercy Park, Indiana, where said mine was located; that said checks represented an amount due from the appellee to the holders; that appellant was in business near said mine, and, in business transactions with said employes, purchased their claims for a valuable consideration, and received from them, as evidence of their claims, said brass checks; that said checks so purchased represented in the aggregate $500; that appellant is not now able to give the names of the persons from whom he purchased said checks;

that he presented them to said Patton & Baldridge
for payment, which was refused; that he also pre-
sented them to appellee for payment, which was like-
wise refused, and that the amount represented by
them is due, etc.   The second paragraph is identical
with the first, except that it does not aver that the
checks were presented to Patton & Baldridge for pay-
ment.

In the language of the complaint, "a copy or *fac
simile* of the inscription of said checks" are made
exhibits.   There are three of them, and they are as
follows:

The other two are just like the above, except one
calls for fifty and the other for twenty-five cents.   On
one side of the check above set out are impressed the
words and figures, "Good for $1.00 in Trade," and on
the reverse side the words, "Patton & Baldridge,
Grammercy Park, Ind."

It is difficult to understand upon what theory the
complaint proceeds.   It is plain, however, that ap-
pellant seeks a recovery upon one of two theories:
(1) Upon the brass checks, which he describes in his
complaint, and which he makes his exhibits thereto;
or (2) Upon an account for work and labor performed
by the employes of appellee, and an assignment there-
of to him by such employes.   If he relies upon the lat-
ter theory, his complaint is radically defective for two

reasons: (1) There is no sufficient statement, in the complaint or bill of particulars accompanying it as an exhibit, of the work and labor performed by such employes; and (2) such employes are not made defendants, to answer as to their interests, and no sufficient showing is made why they are not. We must assume, therefore, that this is not the theory upon which the complaint proceeds, but that the plaintiff has grounded his action upon the checks. Upon the latter theory, it seems clear to us, no cause of action is stated. These checks show on their face that they were only good "in trade" at a fixed and definite place, and that was at Patton & Baldridge's. It is also charged in the complaint that they were made payable there. These checks were not commercial in their character, and the appellant took them charged with a full knowledge of their infirmities. The complaint assumes that these checks were valid, and it appears to us that the action is predicated upon them, and must upon this theory either stand or fall. It must be held, under the facts pleaded, that these checks were issued to the employes of appellee in payment, or, at least, in part payment, for labor performed by them. They were redeemable by appellee at the store of Patton & Baldridge. As to whether these checks were purchased by appellant at a discount, as a speculation, we have nothing to do, although counsel have discussed this question.

The issuing of the checks, under the statute, was an unlawful act, and this appellant admits. Section 7060, Burns' R. S. 1894 (5206x, Horner's R. S. 1897), provides, "that any person, copartnership, corporation, etc., * * * who shall publish, issue or circulate any check, card or other paper which is not commercial paper payable at a fixed time at any bank in this State, at its full face value in lawful money

of the United States, * * * to any employe of such person, copartnership, corporation, etc., * * * in payment for any work or labor done by such employe * * * shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined," etc. The complaint avers that said checks represented money due the employes of appellee for work and labor done, and did in fact represent amounts due from appellee to the holders thereof. If this is true, then the checks must be regarded as evidences of indebtedness, or, in other words, a promise to pay money. They would constitute the contracts between the parties.

"When the object of the contract is to obstruct justice and duty, by defeating the letter or spirit of the law, the courts will not enforce the agreement. It would be a travesty upon government. Could its judiciary lend aid to attempts to defeat the very ends of government itself? It has been repeatedly and most emphatically decided that contracts contrived for the purpose of violating statutes, are inoperative and void. When such a contract is in defiance of an absolute provision of a statute, the illegality is more apparent. * * * If an act is forbidden, a contract to do it is void, whether any penalty be attached or not, for no one can use the law to effect its violation." 9 Am. & Eng. Encl. of Law, p. 909. It is the rule everywhere that courts will not enforce a contract made to violate a statute of the state. *Smith v. Arnold*, 106 Mass. 269; *Prescott* v. *Battersby*, 119 Mass. 285; *Barton* v. *Port Jackson, etc., Co.*, 17 Barb. (N. Y.) 397; *Tenney* v. *Foote*, 4 Ill. App. 594; *Caldwell* v. *Bridal*, 48 Ia. 15; *Thomas* v. *City of Richmond*, 12 Wall (U. S.) 349; *Burkholder* v. *Beetem's Adm.*, 65 Pa. St. 496; *Blasdel* v. *Fowle*, 120 Mass. 447; *Austin* v. *Markham*, 44 Ga. 161.

In *Case* v. *Johnson*, 91 Ind. 477, the court say: "The

general rule of law is well settled, that a contract prohibited by a penal statute is absolutely void. The courts will not enforce such contracts, but will leave the parties who have contracted in violation of such a statute, without any remedy at law, whenever they are *in pari delicto.*"

In *Deming* v. *State, ex rel.,* 23 Ind. 416, it was said: "The general rule of law that a contract prohibited by statute is void, is familiar, and we do not lose sight of it. It is a wholesome rule in every case where it is properly applicable. The general doctrine as to such contracts is, that the courts will not enforce them, * * * but parties who have contracted in violation of law, will be left without remedy whenever they are *in pari delicto.* The plain reason and purpose of the rule commends it to every enlightened judgment. It is to secure obedience to the statute which has forbidden the thing to be done, and thereby aid in accomplishing the legislative intention." See, also, *Scotten* v. *State, ex rel.,* 51 Ind. 52.

In *Griswold* v. *Waddington,* 16 Johns. 438, the following language is used: "There is to my mind something monstrous in the proposition that a court of law ought to carry into effect a contract founded upon a breach of the law. It is encouraging disobedience and giving to disloyalty its unhallowed fruits. There is no such mischievous doctrine to be deduced from the books." See, also, *Bowman* v. *Phillips,* 41 Kan. 364, 21 Pac. 230.

We have in this State a statute, section 2019, Burns' R. S. 1894, making it a felony for certain public officers to loan public funds; and in the case of *Winchester, etc., Co.* v. *Veal,* 145 Ind. 506, where a county treasurer loaned money belonging to the county, in violation of the statute, it was held he could not recover. In that case Howard, J., speaking for the

court, said: "It is hence argued that, having engaged in the commission of an act made criminal by the law of the State, the appellee is not in a position to invoke the same law to aid him in the recovery of the money loaned; that by assisting him to make good his loan, the law would, in effect, be but abetting him in his wrong-doing. In other words, the law cannot help the criminal to reap the fruits of his crime, but must leave him where it finds him." Citing with approval *Rock* v. *Stinger*, 36 Ind. 346, and Lord Mansfield in *Holman* v. *Johnson*, 1 Cowp. 343.

We must assume that the appellant, when he purchased said checks, knew they were issued in violation of a penal statute of the State, and that in his hands they would create no legal liability against appellee. Suppose these checks were still in the hands of the employes, to whom they were issued, and appellee refused to pay them. They could not recover from appellee the amounts represented by the checks, and make the checks the basis of the action. Their sole remedy would be to disregard the checks and sue on the *quantum meruit*, as for work and labor performed. The appellant is in no better position to maintain an action on the checks than the original holders, and as it is manifest that they could not do so, it follows that appellant's complaint does not state any cause of action. If appellant intended to disregard the checks, and sue upon an account for labor of appellee's employes, as upon an equitable assignment, and as an equitable assignee, and ask to be subrogated to the original rights of such assignors, a different question would be presented; but that is not the theory of the complaint, and hence that question is not before us for decision.

The demurrer to the complaint was properly sustained. Judgment affirmed.