MARKS ET AL. *v.* CONRAD SEIPP BREWING COMPANY.

[No. 10,509.   Filed October 29, 1920.]

1. INTOXICATING LIQUORS.—*Retail License.*—*Accepting Aid of Brewing Company.*—*Statute.*—Under §8323f Burns 1914, Acts 1911 p. 244, relating to the issuance of retail liquor licenses, an applicant for a retail liquor license who has accepted a loan from a brewing company under an agreement to use such company's product exclusively could not obtain a license, since he could not qualify himself as a fit and proper person to have a license within the terms of the statute. p. 53.

2. INTOXICATING LIQUORS.—*Agreement to Sell Products of Brewery in Consideration of Loan.*—*Legality of Consideration.*—In an action by a brewing company against a saloon keeper on

MAY TERM, 1920. 51

Marks v. Conrad Seipp Brew. Co.—74 Ind. App. 50.

notes given plaintiff pursuant to an agreement that defendant should sell its beer exclusively, the transaction being illegal under §8323f Burns 1914, Acts 1911 p. 244, relating to the issuance of retail liquor licenses, where it affirmatively appeared from the uncontradicted evidence and from defendant's answer, whether drawn on the theory of accord and satisfaction or of illegal consideration, that the transaction was against public policy and illegal, the trial court should have further refused to hear the case. p. 54.

From Lake Superior Court; *Charles E. Greenwald,* Judge.

Action by the Conrad Seipp Brewing Company against Louis Marks and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*George P. Rose,* for appellants.
*Davis & Starr,* for appellee.

NICHOLS, J.—This action was by appellee against appellants to recover upon a promissory note executed by appellants to appellee, dated April 25, 1912, the action being commenced July 11, 1917.

To the complaint, Louis Marks, appellant, filed two paragraphs of answer, the first a denial, and the second averring that on or about April 25, 1912, appellee sought to induce appellant Louis Marks to handle and retail in his saloon in Gary, Indiana, the beer manufactured by appellee, and in pursuance of said inducement appellee offered to loan him $1,000 with the understanding and agreement that he was to handle and use as draught beer the product of appellee, and that, if he should use and retail the appellee's beer in his saloon in Gary, Indiana, and should continue to retail it and purchase it from appellee for a period of five years, then the note given and sued upon in this cause should become null and void and noncollectible. In pursuance to said agreement, he complied fully with the same, and used said beer on draught in said saloon, and used a very

great amount of it and excluded all other draught beer for the said period of five years, and used no draught beer except that purchased from appellee, and that because of the fulfillment on his own part of said agreement the note is fully paid and satisfied and is void.

Appellant Clara Marks answered in two paragraphs, the first a denial, and the second averring that at the time she executed the note sued upon she was the wife of appellant Louis and executed the note as his surety.

The case was put at issue by appellee's reply in denial to each of the special paragraphs of answer, and submitted to a jury for trial, which returned a verdict for appellee in the sum of $1,504, principal, interest and attorney's fees. Appellant's motion for a new trial was overruled, and this ruling of the court is the only error assigned.

It is expressly stated by appellants that this case is to be decided upon one question only, and that is whether or not the transaction involved was illegal, and, if it is illegal, appellants contend that the court should refuse any relief to appellee.

It appears by the undisputed evidence that there was a mortgage on the property purchased by appellant for saloon purposes amounting to $625, at the time of the purchase, being the same time as the execution of the note in suit. Appellee's agent testified that he was present when the note was given. The papers were sent to him from Chicago—the release of the mortgage, a check for $375, and the note to be signed by appellant and wife—and upon them signing it, he was to release the mortgage and turn over the check for $375, both of which duties he performed. Appellant turned the check over to Kunert as the balance of the purchase price of the real estate. It was from Kunert that appellant at the time purchased the saloon, and the license under which it was being operated, and which was transferred

to appellant. It thus appears that appellee had full knowledge of the whole transaction.

Section 8323f Burns 1914, Acts 1911 p. 244, §3, in force at the time of this transaction, provides, *inter alia,* that all persons applying for license to sell intoxicating liquors, or for the renewal of such license, shall file a written application, in which it is stated that the applicant is the actual and sole owner of such business; that no other firm, person or corporation has any interest directly or indirectly therein; and that the applicant had not directly or indirectly solicited, received, or accepted, and during the continuation of the license applied for, or any renewal thereof, will not directly or indirectly solicit, receive or accept from any person, firm, or corporation engaged in the manufacture or sale of intoxicating liquors, any gift, loan of money, furniture, fixtures, or other assistance of any kind. The section required that such application should be subscribed and sworn to by the applicant.

Section 8323n Burns 1914, Acts 1911 p. 244, §11, requires that one purchasing a license shall file with the board of commissioners, a written application for leave to purchase such license at the time and in the manner required of applicants for license to sell intoxicating liquors.

It is a matter of history that a part of the corrupting influence of saloons emanated from the fact that many of them were owned or controlled by the breweries, by whom they were placed in the hands of irresponsible persons who were dependent upon the breweries for their financial support. Public policy demands that such a condition of dependence and irresponsible operation be abrogated, and the act above mentioned resulted. Under it, one under the dependent influence of the brewery, as in this case, by accepting a loan from it under an agreement to use its product ex-

54    APPELLATE COURT OF INDIANA,

Marks v. Conrad Seipp Brew. Co.—74 Ind. App. 50.

clusively, could not obtain a license to sell intoxicating liquors, for he could not, by his application, qualify himself as a fit and proper person to have such license, unless by his sworn application he committed perjury.

Appellee contends that the answer mentioned is not an answer of illegal consideration, but one of accord and satisfaction, or of payment, and, upon the proposition that illegal consideration is an affirmative defense, and that it must be specially pleaded, cites *Casad* v. *Holdridge* (1875), 50 Ind. 529; *Fisher* v. *Fisher* (1888), 113 Ind. 474, 15 N. E. 832; *Kain* v. *Rinker* (1890), 1 Ind. App. 86, 27 N. E. 328; *Bowser* v. *Spiesshofer* (1891), 4 Ind. App. 348, 30 N. E. 942.

Granting that the law is correctly stated in each of these cases, we do not need to run counter thereto in deciding this case. By the answer under consideration, whether it be held as an answer 2. drawn on the theory of accord and satisfaction or of illegal consideration, it affirmatively appears by averment, which is sustained by uncontradicted evidence, unobjected to, that the transaction was one against public policy and illegal under the statute. The illegality was therefore directly called to the attention of the trial court, both by the pleading and by the evidence, and it should then have refused further to hear the case. The courts generally have spoken in no uncertain language on this question.

In the case of *Bromley's Admr.* v. *Washington Life Ins. Co.* (1906), 28 Ky. Law 1300, 92 S. W. 17, 5 L. R. A. (N. S.) 747, the court says: "The defense need not be pleaded. If any time it appears in the process of the action that the contract sued upon is one which the law forbids, the court will refuse relief." In the case of *Dunn* v. *Stegemann* (1909), 10 Cal. App. 38, 101 Pac. 25, the court held that when the illegality of the contract appears, the court should *sua sponte* deny relief

to either party.   In *Sharp* v. *Teese* (1827), 9 N. J. L.
438, 17 Am. Dec. 479, the court said:   "The attempt to
contravene the policy of a public statute is illegal.   Nor
is it necessary to render it so that the statute should
contain an express prohibition of such attempt.   It al-
ways contains an implied prohibition; and to such at-
tempt the principles of the common law are invariably
and deadly hostile, not always by an interference be-
tween the parties themselves, or by enabling the one to
recall from the other, where in *pari delicto*, what may
have been obtained; but by at all times refusing the aid
of the law to carry into effect or enforce any contract
which may be the result of such intended contraven-
tion."   In the case of *Cummins* v. *Pence* (1910), 174
Ind. 115, 91 N. E. 529, it is held that a thing within
the intent of an act is made as much a part of it as if
written therein.   In *Claflin* v. *U. S. Credit System Co.*
(1896), 165 Mass. 501, 43 N. E. 293, 52 Am. St. 528,
the court said:   "The illegality of the contract is not
set up in defense, nor was it noticed in the Superior
Court, where the plaintiff had a verdict.   But no court
will consciously lend its aid for the enforcement of an
illegal contract.   In the case of *Oscanyan* v. *Arms Co.*
(1880), 103 U. S. 261, 26 L. Ed. 539, the court, speak-
ing of a recovery on an illegal contract, said:   "The
objection to a recovery could not be obviated or waived
by any system of pleading, or even by the express stipu-
lation of the parties.   It was one which the court itself
was bound to raise in the interest of the due administra-
tion of justice.   The court will not listen to claims
founded upon services rendered in violation of common
decency, public morality, or the law."   This case is
cited with approval in *Mount* v. *Board, etc.* (1907), 168
Ind. 661, 80 N. E. 629, 10 L. R. A. (N. S.) 483.   Other
cases to like effect are *Robertson* v. *Hays* (1888), 83
Ala. 290, 3 South. 674; *McNulta* v. *Corn Belt Bank*

(1897), 164 Ill. 427, 45 N. E. 954, 56 Am. St. 203; *Roselle* v. *Farmers' Bank* (1897), 141 Mo. 36, 39 S. W. 274, 64 Am. St. 501; *Wight* v. *Rindskopf* (1877), 43 Wis. 344; *U. S. Bank* v. *Owens* (1829), 2 Pet. (U. S.) 527, 7 L. Ed. 508; *Richardson* v. *Buhl* (1889), 77 Mich. 632, 43 N. W. 1102, 6 L. R. A. 457.

To the effect that contracts in contravention of good morals, public policy, or the law are void in Indiana, see *Root* v. *Stevenson's Admr.* (1865), 24 Ind. 115; *Whitesides* v. *Hunt* (1884), 97 Ind. 191, 49 Am. Rep. 441; *Hutchins* v. *Weldin* (1888), 114 Ind. 80, 15 N. E. 804; *Brown* v. *First Nat. Bank* (1894), 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206; *Naglebaugh* v. *Harder, etc., Co.* (1899), 21 Ind. App. 551, 51 N. E. 427; *Terre Haute Brewing Co.* v. *Hartman* (1898), 19 Ind. App. 596, 49 N. E. 864; *Deming* v. *State, ex rel.* (1864), 23 Ind. 416; *Overshiner* v. *Wisehart* (1877), 59 Ind. 135. In the last case cited, the court, speaking of an illegal transaction, said: "The court should have dismissed the case, even though the defendant did not claim any relief from the fraud; not because he is more favored than the plaintiff, but because both are equally culpable."

The judgment is reversed, with instructions to the trial court to dismiss the case.