THE STATE OF CONNECTICUT EX REL. WILLIAM R. FOOTE *vs.* CLIFFORD G. BARTHOLOMEW ET ALS.

THE STATE OF CONNECTICUT *vs.* E. VICTOR ERICKSON ET ALS.

Third Judicial District, Bridgeport, April Term, 1928.

MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 12th—decided July 18th, 1928.

*Ernest L. Averill* and *Thomas R. Fitzsimmons,* for the appellants (defendants).

*George E. Beers* and *William L. Beers,* for the appellees (plaintiffs).

MALTBIE, J. Each of these actions has been twice before the court. The decisions in *State ex rel. Foote* v. *Bartholomew* will be found reported in 103 Conn. 607, 132 Atl. 30, and 106 Conn. 698, 138 Atl. 787; those in *State* v. *Erickson,* in 104 Conn. 542, 133 Atl. 683, and 106 Conn. 698, 138 Atl. 787. Both actions concern the duty of the tax officials of the town of Branford to list for taxation certain real property in that town owned by the First Ecclesiastical Society. In the former action the plaintiff seeks a mandamus to compel the board of relief under the provisions of Chapter 207 of the Public Acts of 1923 to place the land on the tax list of 1924 as property omitted by the assessors, and in the latter the plaintiff seeks a mandamus to compel the assessors to list and value the same property in the

tax list of 1925 in accordance with certain statutory provisions. Both actions having been remanded by this court to the Superior Court for further proceedings, the respondents filed in each a return divided into numerous counts, these returns raising in many respects the same issues. In each the plaintiff demurred to the several counts of the return and the trial court sustained the demurrer. The respondents declined to plead over and from judgments entered for the plaintiffs have appealed to this court.

In the third count of the return in the Foote action, it is alleged that the question of the taxation of the property against the First Ecclesiastical Society was before the board of relief upon an appeal from the doings of the assessors, and that the board of relief decided that under the statutes and law of Connecticut the property was exempt from taxation as against the Society. While, as we shall show, the decision of the board was an erroneous one, a conclusion that the property was exempt from taxation is not one which, in view of the applicable statutory provisions and previous decisions of this court, is free from difficulty, and the board, composed of laymen, might fairly and honestly reach it. That being so, the matter would not be one where mandamus might properly issue. Even a mistake in law, unless it amounts to a plain disregard of the rules established by statute or the decisions of this court for the guidance of a public official, will not justify the courts in interfering by mandamus with the exercise of a fair and honest judgment by him in a matter the duty of deciding which is imposed upon him by law. *State* v. *Erickson,* 104 Conn. 542, 545, 133 Atl. 683; *State ex rel. Metropolitan Life Ins. Co.* v. *Upson,* 79 Conn. 154, 163, 64 Atl. 2; *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683, 691, 56 L. Ed. 610, 32 Sup. Ct. 356. Under the count of the return now in question,

facts might be proven which would show that the court might not issue the mandamus in this case and the demurrer to it should have been overruled.

Turning to the other counts of the return in the Foote action, we find that the first is withdrawn. The second, fifth, sixth, seventh and eighth counts set out that the property was included in the assessment list of that town; that in 1866 the Ecclesiastical Society leased the land for the term of ninety-nine years, the lease providing that the lessee should pay the taxes assessed upon it; that the property should be assessed if at all against the lessees; that it was so assessed in the list of 1924 at a valuation in proportion to that placed upon other property in the town; that neither the State, the town, nor its taxpayers have suffered any damage by reason of the failure to list the property against the Society; that, by reason of the fact that the property has for many years been assessed against the lessees, and many tax liens have been filed and now exist based upon those assessments, hardship would result to the Society and the lessees if the Society is forced to pay the tax and collect from the various lessees; and that the method of taxation which has been pursued is an equitable and fair one. In *Montgomery* v. *Branford,* 107 Conn. 697, 142 Atl. 574, we expressly held that the town had no right to assess a portion of this property against a lessee who held it under a sublease executed in 1903, and therefore having about sixty-four years to run, and that the provision in the original lease for ninety-nine years that lessees should pay the taxes assessed on the land did not alter this result. So far as appears, none of the lessees against whom the property is alleged to have been assessed hold such a freehold interest in it that it or any portion of it could be taxed against them under our statutes. Certainly the fact that, by an ille-

gal assessment against those not properly bound to pay the taxes on it the treasury of the town will receive as large an amount as it would if the land were properly assessed against the party legally bound to pay them, is no defense to the action; nor can any hardship to the parties which will be caused in the effort to adjust their rights under former illegal assessments justify like assessments in the present and future; nor can a method of taxation in violation of the plain mandates of the law applicable in this case be deemed fair and equitable. These counts, neither separately nor together; alleged any defense to the action.

In the fourth count of the return in the Foote action, the respondents allege that the relator himself took the appeal to the board of relief referred to in the third count and mentioned above and from the denial of that appeal has appealed to the Superior Court where the matter is still pending; that he is prosecuting the action at his own expense; and that the State is not the real party in interest. But in *State* v. *Erickson*, 104 Conn. 542, 548, 133 Atl. 683, we held that the right of appeal to the board of relief given to individuals under the statute did not debar such a proceeding as this. As we pointed out when this action was before us on another occasion, the right in question is a public right and as such one properly to be enforced in a proceeding by the State's Attorney. *State ex rel. Foote* v. *Bartholomew*, 103 Conn. 607, 618, 132 Atl. 30. But it is no defense that a private individual interested in the matter as a taxpayer of the town has been permitted to bear the burden of the action. *Bridgeport* v. *Equitable Title & Mortgage Co.*, 106 Conn. 542, 550, 138 Atl. 452. In the sixth count the claim is advanced that, as the property was placed in the tax lists in the names of the lessees, it was not "omitted" therefrom within the provisions of the statute under which the

action is brought; but any property is "omitted" when it is not listed against the person legally bound to pay the tax thereon, even though it be illegally listed against some other person. A tenth count, added by amendment, seeks to take advantage of a provision of a Validating Act passed by the legislature in 1927, which attempts to validate the assessments made against the lessees; Public Acts of 1927, Chap. 325, §22; but in the *Montgomery* case we held this Act to be unconstitutional.

The only remaining count in the return alleges that the property in question was acquired by the Society subsequent to the enactment of the so-called statute of 1702, which provided that all lands, tenements, hereditaments and other estates given for the maintenance of the ministry of the gospel and for certain other charitable uses, should remain devoted to such uses and be "exempted out of the general lists of estates and free from the payment of rates"; and that the land was deeded to the Society for the purpose of the maintenance of the ministry of the gospel and all funds derived from it have been used for that purpose or for benevolent or charitable purposes. In so far as the consideration of the present demurrer is concerned, it would be sufficient to point out that it is not stated when the property was acquired and this might have occurred after the repeal of the tax exemption contained in the statute of 1702, which occurred in 1821. *Osborne* v. *Humphrey,* 7 Conn. 335, 340. But as the case must be remanded for further proceedings, this claim requires further consideration.

The contention of the respondents that the provision as to tax exemption in the statute was contractual in its nature and that when an exemption had attached to land by reason of its having been acquired while the statute was in force, the legislature might not there-

after subject the land to taxation, finds support in some of our earlier decisions; *Atwater* v. *Woodbridge,* 6 Conn. 223; *Osborne* v. *Humphrey,* 7 Conn. 335; *Parker* v. *Redfield,* 10 Conn. 490; *Landon* v. *Litchfield,* 11 Conn. 251; *Seymour* v. *Hartford,* 21 Conn. 481; although in *Landon* v. *Litchfield,* only four judges sat on the case and of those one delivered a vigorous dissent; and in *Seymour* v. *Hartford,* the majority opinion recognized the principle only as one established in the prior cases rather than as one then approved. On the other hand, in *Brainard* v. *Colchester,* 31 Conn. 407, the court expressed the view that the statute did not of itself make the right to an exemption which had attached under its provisions one that the legislature might not do away with by a repeal of the statute, and in *Lord* v. *Litchfield,* 36 Conn. 116, it was definitely so held. This position is reiterated in *First Ecclesiastical Society* v. *Hartford,* 38 Conn. 274, 287, although the court held in that case that there had been no repeal of the tax exemption granted in the Act of 1702 so long as property acquired while it was in force was faithfully appropriated to one of the designated uses. In *Russell* v. *New Haven,* 51 Conn. 259, the court had before it the question of the taxation of a building erected upon land leased from an ecclesiastical society under a sixty year lease with an annual ground rent, and it held that the building was taxable as the property of the lessee. In the course of the opinion occurs a brief statement that it was conceded that the land was exempt under the statute of 1702. No question of the taxability of the land was involved in that case; the opinion was written in 1883; the law had continued unchanged from that existing when *First Ecclesiastical Society* v. *Hartford* was decided until 1879; Revised Statutes, 1875, p. 154; Public Acts of 1879, Chap. 24; and it is quite probable that the change in that year was over-

looked when the *Russell* case was argued. We attach no significance to the concession made in it.

We entertain no doubt of the correctness of our later decisions upon this matter. In order to give to a statute granting an exemption such a contractual nature that it may not be repealed, it is necessary in the first place that there must be a clear intent to create something more than a mere privilege or bounty repealable at the will of the legislature. *Rector of Christ Church* v. *County of Philadelphia*, 65 U. S. (24 How.) 300, 302; *Grand Lodge* v. *New Orleans*, 166 U. S. 143, 41 L. Ed. 951, 17 Sup. Ct. 523; *Seton Hall College* v. *South Orange*, 242 U. S. 100, 61 L. Ed. 170, 37 Sup. Ct. 54. That the statute of 1702 was not intended by the legislature to give rise to any contractual obligation was stated by *Church, J.*, in his dissenting opinion in *Landon* v. *Litchfield, supra*, p. 267, and his opinion was approved by the court in *Brainard* v. *Colchester, supra*, p. 411; and in *Lord* v. *Litchfield, supra*, p. 126, it was so held. In the latter opinion the court adopted the statement of *Ellsworth, J.*, in *New Haven* v. *Sheffield*, 30 Conn. 160, 171: "The chief object in the enactment of the statute was not so much to exempt certain estates from taxation, as to confirm and perpetuate the estates referred to in it, with certain attending privileges." That the legislature only intended to grant a privilege or bounty is evident from the terms of the statute itself. In the first place it applied to estates "that either formerly have been, or hereafter shall be given" for the maintenance of the ministry of the gospel or the other designated uses and certainly a contract obligation could not be builded upon a grant for such uses made before the enactment of the statute. *Grand Lodge* v. *New Orleans*, 166 U. S. 143, 148, 41 L. Ed. 951, 17 Sup. Ct. 523. Moreover, the exemption ran to no particular person or class of persons, but is made appli-

cable to all grants, to whomsoever made, so long as they are "for the maintenance of the ministry of the gospel in any part of this Colony, or schools of learning, or for the relief of poor people, or for any other public and charitable use"; and the very generality of these expressions goes far to rebut the thought that the legislature intended to enter into a contractual relationship with any or all persons to whom a grant had been or should thereafter be made. *Salt Co.* v. *East Saginaw,* 80 U. S. (13 Wall.) 373, 377.

To give to a tax exemption the nature of a contractual obligation it must be supported by a consideration. The Supreme Court of the United States, speaking of an Act of Congress claimed to create an exemption of that nature, said: "There was no consideration. The company was required to do nothing, and did nothing in return. As between individuals the stipulation would belong to the category of *nude pacts.* It has no higher character because one of the parties was a State, the other a corporation, and it was put in the form of the statute. It was the promise of a gratuity spontaneously made, which might be kept, changed, or recalled at pleasure." *Tucker* v. *Ferguson,* 89 U. S. (22 Wall.) 527, 574, 22 L. Ed. 805. Again it said: "To make such a contract, however, there is the same necessity for a consideration that there would be if there were a contract between private parties. If the law be a mere offer of a bounty, it may be withdrawn at any time, notwithstanding the recipients of such bounty may have incurred expense upon the faith of such offer." *Grand Lodge* v. *New Orleans, supra,* p. 146. *Church, J.,* in the dissenting opinion in *Landon* v. *Litchfield,* before referred to, stated that he could find no consideration to support the tax exemption granted in the statute of 1702. In *Lord* v. *Litchfield, supra,* page 127, the matter is discussed and the conclusion reached

that there was no consideration which would support any contractual obligation. The situation presented by this statute is very different from that which exists where the tax exemption is contained in a special charter granted by the legislature and accepted by those to whom it is granted, where a consideration may be found in the acceptance of the charter with its attendant duties and obligations. *Home of the Friendless* v. *Rouse,* 75 U. S. (8 Wall.) 430, 437, 19 L. Ed. 495; *People ex rel. New York Central & Hudson River R. Co.* v. *Mealey,* 224 N. Y. 187, 196, 120 N. E. 155. The chief purpose of the statute of 1702, as pointed out, was to confirm and perpetuate the estates therein referred to, with certain attending privileges. As regards property held to the uses stated in it at the time it was adopted, the owners thereof gave no consent to its terms, but any new obligations which may have resulted from it were imposed upon them by the bare fiat of the legislature. As regards land thereafter granted to such uses, the most that could be claimed is that the statute constituted a continuing offer to the grantees thereof that, if they would accept estates granted for such uses, those estates would be free from taxation; but as we have already indicated, we cannot construe the statute as intending any such result or believe it could have had any material effect in inducing the acceptance of land so granted. "The consideration must be actual and not merely speculative and it must have been induced by the grant from the legislature of the franchise privilege or exemption." *People ex rel. New York Central & Hudson River R. Co.* v. *Mealey, supra,* p. 197.

Finally, it is to be remembered that to give to a tax exemption the effect of a contractual obligation is to limit the power of the legislature to mold legislation to meet the needs of the varying circumstances of the

times and inevitably to produce inequalities in tax burdens. Such a result is to be avoided if it can be by any reasonable intendment. *Brainard* v. *Colchester, supra,* p. 410. "To all claims of contract exemption from taxation must be applied the well-settled rule that, as the power to tax is an exercise of the sovereign authority of the State, essential to its existence, the fact of its surrender in favor of a corporation or an individual must be shown in language which cannot be otherwise reasonably construed, and all doubts which arise as to the intent to make such contract are to be resolved in favor of the State." *Seton Hall College* v. *South Orange, supra,* p. 106. These considerations confirm our view that the decisions of this court in *Brainard* v. *Colchester* and *Lord* v. *Litchfield* established that the statute of 1702 did not create a tax exemption of such a nature that the legislature might not repeal or alter it at a later date. That it had repealed it, in so far as the lands here in question are concerned, prior to October 1st, 1924, is not disputed. Public Acts of 1921, Chap. 109. It follows that the allegations in the return inserted to support the claim that the land is exempt by virtue of the provisions of the statute of 1702 do not constitute a defense to the action.

Turning to the Erickson case, we find that the first count in the return, which was in the nature of a general denial of the allegations of the complaint, was withdrawn. The second count alleges that the assessors had listed the property for taxation against the Ecclesiastical Society on January 20th, 1926, before the action was brought, and that they were without power thereafter to alter that assessment. The assessors were not required to complete the tax lists and file them with the town clerk until the 31st day of January in each year. General Statutes, 1918, §1149. It was

within their power to alter the assessment at any time before the lists were completed and filed. It does not appear when the writ in this action was issued, but it is dated January 23d, 1926, and we cannot assume that it was not served in time for them to alter the assessment before the lists were completed. The allegations of the complaint charge that the assessors were about to value the property, not on the basis of the "actual value" required by the statute, but by taking its annual rental as fixed more than fifty years ago and by determining the principal sum which at six per cent would return interest equivalent to that rental, and that they were about to list the property "otherwise than by parcels," in violation of the statutory provision requiring a "separate description and valuation of each parcel of real estate." On the former appeal in this case we held that mandamus properly lay to compel the assessors to proceed in accordance with these statutory mandates. *State* v. *Erickson,* 104 Conn. 542, 133 Atl. 683. Obviously it is no answer to this complaint for them to say simply that they have listed the property, without showing that they did so in accordance with the statute. Having still power to act legally when the action was brought, they could not defeat it by alleging that they had acted illegally before it was brought. This count states no defense.

The third count alleges that an appeal was taken from the doings of the assessors acting upon the list of 1925 to the board of relief, seeking to have the property valued in accordance with the statutory provisions to which we have referred; and that the board heard the matter on February 11th, 1926, and struck the property from the tax lists for the reasons stated in a memorandum of decision attached to the return. This appeal must have been taken after the assessors had completed their work on the lists. General Statutes,

§§1230 to 1232. The allegations amount only to this, that this action may not be maintained because, after the assessors had completed their duties, another body of officials decided that the land was not taxable against the Ecclesiastical Society. Manifestly this is not a good return.

The remaining counts in the return in this action are substantially the same as those which we have already considered in connection with the Foote action and held to be insufficient to constitute any defense. As the respondents saw fit to let judgment enter against them upon the sustaining of the demurrer to the special defenses set up in the return and the demurrer to them was properly sustained, the judgment in this action must stand.

There is error in State *ex rel.* Foote v. Bartholomew, the judgment is set aside, and the cause remanded to be proceeded with in accordance with this opinion. There is no error in State v. Erickson.

In this opinion the other judges concurred.