**REICHELDERFER et al., Com'rs, v.
JOHNSON.**

No. 6082.

United States Court of Appeals for the
District of Columbia.

June 25, 1934.

GRONER, Associate Justice, dissenting.

William W. Bride and Vernon E. West,
both of Washington, D. C., for appellants.

Joseph T. Sherier, of Washington, D. C.,
for appellee.

Before MARTIN, Chief Justice, and
ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The appellee filed a petition in the court
below praying a writ of mandamus to the
appellants commanding them to issue a permit
authorizing him to sell beverages, including
beer containing one-half of 1 per cent. of alcohol by volume and not more than 3½ per
cent. of alcohol by weight. The issuance of
permits to sell such beverages within the District of Columbia is regulated by the act of
April 5, 1933 (73d Cong., 1st Sess., c. 19 [D.
C. Code Supp. I, 1933, T. 20, 1801 and note,
1802–1816]). The particular form of permit

desired is what is designated by that act as an "off sale" permit, which authorizes the permittee to sell beverages only for consumption off the premises designated in the permit. The pertinent provision of the act reads as follows: "Sec. 5. (a) Any individual, partnership, or corporation desiring a permit under this chapter shall file with the Commissioners an application therefor in such form as the Commissioners may prescribe, and such application shall contain such information as the Commissioners may require, and * * * shall contain a statement setting forth the name and address of the true and actual owner of the premises upon which the business to be permitted is to be conducted. Before a permit is issued the Commissioners shall satisfy themselves * * (5) that, in case of an applicant for an 'on sale' or an 'off sale' permit, no manufacturer or wholesaler of beverages (other than the applicant) has a substantial financial interest, direct or indirect, in the business for which the permit is requested or in the premises in respect of which such permit is to be issued, and that such business will not be conducted with any money, equipment, furniture, fixtures, or property rented from, or loaned or given by, any manufacturer or wholesaler." (D. C. Code Supp. I, 1933, T. 20, § 1805 (a).

The premises in respect of which the petitioner applied to the Commissioners for a permit are owned by Christian Heurich, Jr., who was treasurer of the Christian Heurich Brewing Company and owner of 1,020 shares of the total capitalization of 8,000 shares of the stock of that company. This company held a manufacturer's permit under the same act of Congress, and is engaged in the manufacture of beverages pursuant to that act in the District of Columbia.

On May 26, 1933, the Commissioners denied Johnson's application for an "off sale" permit, and entered the following order:

"Ordered:

"That upon consideration of the application of Raymond T. Johnson, 4200 Wisconsin Avenue, for an off sale beverage permit under the act of Congress of April 5, 1933, said application being Number 1765, the Commissioners of the District of Columbia hereby deny said application and direct the refund to the applicant of the deposit made by him with said application; said application is denied on the following ground:

"That Christian Heurich, Jr., owner of said premises 4200 Wisconsin Avenue, upon which the business of the applicant is to be conducted, is the treasurer of the Chr. Heu-

rich Brewing Company which is engaged in the business of manufacturing beverages as defined in the act of April 5, 1933, and that said Heurich is the owner of 1,020 shares out of a total capitalization of 8,000 shares at the par value of $100 each of said corporation, and that, therefore, a manufacturer of such beverages has a substantial financial interest, direct or indirect, in the premises in respect of which such permit is desired.

"By order of the Board of Commissioners, D. C.

> "Daniel E. Garges,
> "Secretary to the Board."

In their answer to the petition, the Commissioners alleged that a manufacturer of beverages as defined in the act of April 5, 1933, had a substantial financial interest, direct or indirect, in the premises in respect of which the permit was desired. To this answer the petitioner demurred, the court below sustained the demurrer, and ordered the writ to issue.

The Commissioners have not contended on this appeal that the Christian Heurich Brewing Company, which is conceded by the petitioner to be a manufacturer, has any interest in the premises. Their argument is that Christian Heurich, Jr., owner of the premises, by virtue of his officership and ownership in the company, is a manufacturer within the meaning of the statute.

In their contentions here both parties appear to lose sight of the traditional and well-established limitations upon writs of mandamus to public officers, for mandamus will not issue where its effect will be to dictate to an officer in the exercise of a discretionary function, or to serve the purpose of a writ of error. Only where a mandatory ministerial duty is plainly imposed upon the officer will mandamus lie against him. And, since the earliest cases, it has been held that where an officer's action involves the exercise of his discretion in the construction and interpretation of a statute, mandamus will not issue to compel him to act upon one construction rather than another. Decatur v. Paulding, 14 Pet. 497, 599 Append., 10 L. Ed. 559, 609; U. S. ex rel. Dunlap v. Black, 128 U. S. 40, 9 S. Ct. 12, 32 L. Ed. 354; Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62; Ness v. Fisher, 223 U. S. 683, 32 S. Ct. 356, 56 L. Ed. 610; U. S. ex rel. Riverside Oil Company v. Hitchcock, 190 U. S. 316, 23 S. Ct. 698, 47 L. Ed. 1074; U. S. ex rel. Hall v. Payne, 254 U. S. 343, 41 S. Ct. 131, 65 L. Ed. 295; Wilbur v. U. S., 281 U. S. 207, 50 S. Ct. 320, 74 L. Ed. 809; Interstate Commerce Commission v. New

York, N. H. & H. R. Company, 287 U. S. 178, 53 S. Ct. 106, 77 L. Ed. 248; U. S. v. Interstate Commerce Commission, 56 App. D. C. 40, 8 F.(2d) 901; Commercial Solvents Corporation v. Mellon, 51 App. D. C. 146, 277 F. 548; U. S. ex rel. Schwerdtfeger v. Brownlow, 45 App. D. C. 412; Lochren v. Long, 6 App. D. C. 486; Seymour v. U. S. ex rel. South Carolina, 2 App. D. C. 240; Kimberlin v. Commission to Five Civilized Tribes (C. C. A.) 109 F. 653; American Casualty Company v. Fyler, 60 Conn. 448, 22 A. 494, 25 Am. St. Rep. 337; Troy v. Barnitt, 165 A. 576, 11 N. J. Misc. 275; U. S. v. Judge Lawrence, 3 Dall. 42, 1 L. Ed. 502.

Of course, almost every act of a federal official requires in some degree the construction of a statute, and, where its meaning is so plain that there can be no reasonable difference of opinion concerning its construction, mandamus will lie to prevent action by an officer predicated upon an obvious misconstruction of the statute. Roberts v. U. S., 176 U. S. 221, 20 S. Ct. 376, 44 L. Ed. 443; Lane v. Hoglund, 244 U. S. 174, 37 S. Ct. 558, 61 L. Ed. 1066; Work v. Lynn, 266 U. S. 161, 45 S. Ct. 39, 69 L. Ed. 223; Work v. McAlester, etc., Co., 262 U. S. 200, 43 S. Ct. 580, 67 L. Ed. 949; Wilbur v. Krushnic, 280 U. S. 306, 50 S. Ct. 103, 74 L. Ed. 445; McCarl v. Miguel, 62 App. D. C. 259, 66 F.(2d) 564; U. S. v. Fall, 51 App. D. C. 171, 277 F. 573; Cook v. City of Shreveport, 163 La. 518, 112 So. 402. But the writ is not justified because the court disagrees with the interpretation adopted by the officer, or because it might have come to a different conclusion had the question of construction been presented to it in a distinct proceeding. United States ex rel. Dunlap v. Black, 128 U. S. 40, 9 S. Ct. 12, 32 L. Ed. 354; State v. Bartholomew, 108 Conn. 246, 142 A. 800. Despite such a difference of opinion between the court and the officer, mandamus will not lie if the construction of the officer is a possible one, and there is room for an honest difference of opinion. Ness v. Fisher, 223 U. S. 683, 32 S. Ct. 356, 56 L. Ed. 610; U. S. ex rel. Hall v. Payne, 254 U. S. 343, 41 S. Ct. 131, 65 L. Ed. 295; Interstate Commerce Commission v. New York, N. H. & H. R. Co., 287 U. S. 178, 53 S. Ct. 106, 77 L. Ed. 248; U. S. ex rel. Schwerdtfeger v. Brownlow, 45 App. D. C. 412; Phillips v. Hitchcock, 19 App. D. C. 237; State v. Bartholomew, 108 Conn. 246, 142 A. 800.

Guided by these settled principles defining the right of a petitioner to such a writ in such a case, we proceed to examine the statute in question with a view to determining whether the construction adopted by the Commissioners is a possible one. The purpose of the pertinent provision is clear. One of the well-recognized objections to the methods of sale and distribution of liquors prior to the era of prohibition was the fact that brewers and wholesalers frequently monopolized and controlled the retail trade. As stated by Judge Nichols in Marks v. Conrad Seipp Brewing Co., 74 Ind. App. 50, 128 N. E. 620, 621: "It is a matter of history that a part of the corrupting influence of saloons emanated from the fact that many of them were owned or controlled by the breweries, by whom they were placed in the hands of irresponsible persons who were dependent upon the breweries for their financial support. Public policy demanded that such a condition of dependence and irresponsible operation be abrogated, and the act above mentioned resulted. Under it one under the dependent influence of the brewery, as in this case, by accepting a loan from it under an agreement to use its product exclusively, could not obtain a license to sell intoxicating liquors, for he could not, by his application, qualify himself as a fit and proper person to have such license, unless by his sworn application he committed perjury."

Congress recognized this undesirable aspect of the liquor traffic in the period before repeal, and attempted to guard against its recurrence by appropriate legislation. The debates upon the bill preceding its passage by the House of Representatives give ample evidence of the recognition of this danger. Representative O'Connor stated (77 Cong. Rec. Pt. 1, p. 816):

"I believe further that every effort should be made to prohibit the brewers from obtaining a monopoly of this business.

"The beer bill does provide that no brewer shall have any interest in any retail place. I believe that should be strengthened, so that there is no possibility of a brewery running a chain of restaurants or so-called 'saloons.'

* * *

"I do hope the committee will make every effort to prevent monopolies. The curse of the old system was the fact that the brewers owned all the saloons."

These sentiments were echoed by Representative Black (77 Cong. Rec. Pt. 1, p. 845): "One of the things that brought about prohibition was the heavy hand of the brewer on the retailer, and we have to see to it that they are not allowed to resume their oppressive control over the retailer. We have to keep the brewers' hands off the retailers as far as possible."

■ It was the opinion of the Commissioners that to adopt the construction urged upon them by the applicant would militate against the purpose of Congress as manifested by the inclusion of the provision under consideration, and would hamper their successful execution of the statute, and threaten the success of liquor control in the District of Columbia. Certainly we cannot say that their conclusion in this particular was unreasonable. To accede to the petitioner's contention might well open the door to evasion of the statute by a number of corporate devices.

The intent of Congress that the provision divorcing the retail liquor trade from the business of manufacturing liquor or selling it wholesale should be broad in scope and effective in operation is apparent from the legislative history of the provision. When the bill was passed by the House of Representatives, the provision constituted section 12 of the act, and read as follows: "No brewer, manufacturer, wholesaler, or distributor shall have any direct or indirect financial interest in the business of any licensee."

The House had previously rejected an amendment to this section offered by Representative Watson, which would have weakened the provision by the insertion after the word "indirect" of the word "controlling." It was in opposition to this amendment that Representative Black made the statements quoted above.

When the bill was received in the Senate, it was referred to the Committee on the District of Columbia, which proceeded to strike out all but the enacting clause and completely rewrite the bill. In the bill as amended by the Committee the provision under discussion appeared in the form in which it was finally enacted. The Committee report stating (Sen. Rep. No. 12 on H. R. 3342, 73d Cong., 1st Sess., pp. 4, 5):

"The committee amendment also amplifies the provisions of the House bill in regard to the interrelation of the 'on sale' or 'off sale' permittee and the manufacturer or wholesaler. Under the committee amendment before an 'off sale' or 'on sale' permit is issued the Commissioners must satisfy themselves that no manufacturer or wholesaler has any substantial financial interest, direct or indirect, in the business for which the permit is requested, or in the premises for which the permit is to be issued, and that the business will not be conducted with any moneys, equipment, furniture, fixtures, or property rented from or loaned or given by any manufacturer or wholesaler. * * *

"Interrelation of manufacturer or wholesaler and permittee.

"The House bill prohibited any manufacturer or wholesaler having any direct or indirect financial interest in the business of a permittee. Under the committee amendment if any manufacturer or wholesaler has any substantial financial interest, direct or indirect, in the business of any 'on sale' or 'off sale' permittee, or in the premises on which such business is conducted, the permit may, in the discretion of the Commissioners, be revoked. The committee amendment also provides that no manufacturer or wholesaler shall rent, lend, or give to any permittee, or to the owner of the premises on which he conducts his business, any money or property to assist in the conduct of the business."

An intent to give the Commissioners a broad discretion in granting and revoking retail permits is apparent in the statement in this connection of Mr. Palmisano, of the House Committee on the District of Columbia, which reported the bill, that (77 Cong. Rec., pt. 1, p. 816): "We want to give the Commissioners all of the power that we possibly can give them."

■ We think it apparent from the legislative history of this provision that Congress intended a divorce a vinculo between the business of brewing beer and the retail sale thereof, and to give the Commissioners wide latitude in enforcing this manifest purpose, which strongly supports the authority of the Commissioners to take the action complained of here. Atlantic Cleaners & Dyers v. U. S., 286 U. S. 427, 52 S. Ct. 607, 76 L. Ed. 1204; Dickson v. Uhlmann Grain Co., 288 U. S. 188, 53 S. Ct. 362, 77 L. Ed. 691; U. S. v. Great Northern Ry., 287 U. S. 144, 53 S. Ct. 28, 77 L. Ed. 223; Federal Trade Commission v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 75 L. Ed. 1324, 79 A. L. R. 1191; U. S. v. Mo. Pac. R. Co., 278 U. S. 269, 49 S. Ct. 133, 73 L. Ed. 322; Church of the Holy Trinity v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Binns v. U. S., 194 U. S. 486, 24 S. Ct. 816, 48 L. Ed. 1087; District of Columbia v. Dewalt, 31 App. D. C. 326.

The word "manufacturer" as used in the statute should be construed in accordance with its ordinary and usual meaning and generally recognized import. Caminetti v. U. S., 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Maillard v. Lawrence, 16 How. 251, 14 L. Ed. 925; Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128. In Lauer v. District of Columbia, 11 App. D. C. 453,

this court was called upon to construe the act of March 3, 1893 (27 Stat. 567), which prohibited the sale within the District of Columbia of intoxicating liquors, except as provided in the act. The defendant kept a boarding house and grocery store, and was in the habit of providing beer with lunches, making no separate, independent charge for the beer. An instruction by the trial judge that such disposition of liquor constituted a sale thereof was approved by this court; Mr. Justice Shepard stating in his opinion that the word "sale" as used in the act was not to be tested by its technical meaning in law, but that the statute should be given a liberal and reasonable construction in harmony with its purpose.

Certainly it involves no unreasonable or strained use of the word "manufacturer" as that word is commonly used and understood, to apply it to one who holds a substantial portion of the stock, and is treasurer of, a manufacturing corporation. Such an officer is, presumably, actively occupied in controlling and directing the financial affairs of the company in accordance with the interests and desires of those, including himself, who own it. The petitioner's construction of the word leads to the unsound conclusion that the only "manufacturer" involved in the operations of a manufacturing corporation is the abstract, hypothetical, corporate entity, and that an individual, no matter how great his interest in the assets and profits of the business, or how complete his dominion over its affairs and operations, cannot be regarded as a "manufacturer." To construe the word so technically and so narrowly does violence both to the obvious purpose of the statute, and to common understanding of the words therein used.

We cannot think that Congress intended to erect so elusive a barrier between the parties it had parted.

And there is plenty of precedent to support the construction acted upon by the Commissioners. In United States v. Weedon (C. C.) 3 F. 623, it was held that a member of a partnership engaged in the business of manufacturing matches, who did no manufacturing except in his capacity as a member of the firm, was a "manufacturer" of matches. In United States v. Howard, Fed. Cas. No. 15,-401, the indictment alleged that the defendant was a "distiller," and had failed to pay a fee imposed upon that occupation. The court, in charging the jury, stated that it was not only the persons who carried on "the actual work of manufacturing distilled spirits," but also all persons having an interest in the business of distilling, or directly acting in the production of spirits for their use or benefit, who are "considered distillers under the law." The case of William Rogers Manufacturing. Company v. Simpson, 54 Conn. 527, 9 A. 395, 400, also involved a legal definition of the word "manufacturer." It was held, with two judges dissenting, that one who furnished supervising skill, reputation, and a trade-mark, in connection with an establishment to manufacture plated silverware, was a manufacturer, even though all of the machinery and materials were owned and furnished by another, Judge Pardee stating that: "It is not a legal prerequisite that all of the capital and all of the profits shall belong to him. Consumers have the result of his skill and integrity; and to them that is all there is in the word 'manufacturer.'"

Cf. also Hendy v. Soule, Fed. Cas. No. 6,359, State v. Board of Assessors, 54 N. J. Law, 430, 24 A. 507.

The petitioners lean heavily upon United States v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836, in which the Supreme Court was faced with the question of the constitutionality of the Hepburn Act of June 29, 1906 (39 Stat. 584). This act forbade any railroad company to transport in interstate commerce any manufactured goods which it owned in whole or in part or in which it had a direct or indirect interest. The government contended that the act should be construed to prohibit a railroad from transporting goods owned by a company in which the railroad had any stock interest, however small. This construction the court refused to adopt, but there were two controlling factors there, neither of which is present here. For the court made it clear that if the act should be construed as suggested by the government, grave question would arise concerning its constitutionality. The court accordingly held that since under one of two constructions of which the act was susceptible such constitutional difficulties would arise, it was the duty of the court to adopt the other. Of almost equal importance was the fact that the Senate had rejected an amendment to the bill expressly prohibiting the carrying of commodities owned by a corporation in which the carrying railroad was a stockholder. As Mr. Justice White stated, it could not reasonably be argued that the court should construe the statute "upon the theory that a provision which was expressly excluded was intended to be included." United States v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 538, 53 L. Ed. 836. These factors, we think, clearly show the inapplica-

bility of that decision to this case, and it is also significant that the ostensible effect of the Delaware & Hudson Case was substantially qualified when the same case was before the Court in a subsequent appeal. United States v. Lehigh Valley Railroad Company, 220 U. S. 257, 31 S. Ct. 387, 55 L. Ed. 458.

█ Finally it can make no difference in this case whether Mr. Heurich was owner of the property in question before the passage of the act of April 5, 1933, or whether he acquired it subsequently.

For the statute is concerned with the relation between manufacturer and retailer, based upon the historical effect of that relation in practice, but not with the time or the motive of acquiring a particular property. This case, of course, in no wise involves any reflection upon Mr. Heurich or Mr. Johnson, but we think it falls within the scope of a demonstrated evil which Congress sought to remedy by giving broad discretionary power to administrative officers, and the Commissioners having exercised that power in a manner both possible and reasonable under the statute, their decision is not to be nullified or controlled by a writ of mandamus.

The judgment is therefore reversed, with costs.

GRONER, Associate Justice, dissenting.